FILED BY CLERK

SEP 29 2006

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2002-0084 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | SUPPLEMENTAL |
| | ) | OPINION |
| ISRAEL JOAQUIN ALVAREZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20013408

Honorable Howard Fell, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Joseph T. Maziarz                     Phoenix
                                                     Attorneys for Appellee


Robert J. Hooker, Pima County Public Defender
  By John Seamon                                               Tucson
                                                     Attorneys for Appellant


P E L A N D E R, Chief Judge.

¶1 After a jury trial, appellant Israel Joaquin Alvarez was convicted of first-degree murder based on felony murder and aggravated robbery and was sentenced to concurrent prison terms of life and 6.5 years. In our prior opinion on his appeal, we affirmed those convictions and sentences. *State v. Alvarez*, 210 Ariz. 24, ¶¶ 1, 24, 107 P.3d 350, 352, 356 (App. 2005). We concluded, inter alia, a statement the victim (S.) had made to Pima County Sheriff's Deputy Othic "was nontestimonial hearsay outside the scope of *Crawford* [*v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004)]" and, therefore, "[t]he trial court's admission of S.'s statement did not violate Alvarez's confrontation rights" under the Sixth Amendment to the United States Constitution. *Alvarez*, 210 Ariz. 24, ¶ 22, 107 P.3d at 356.

¶2 This case returns to us from our supreme court, which previously granted Alvarez's petition for review and, after holding oral argument, remanded the case to this court for reconsideration in light of *Davis v. Washington*, ___ U.S. ___, 126 S. Ct. 2266 (2006). *State v. Alvarez*, No. CR-05-0104-PR, 2006 WL 2089243 (Ariz. July 10, 2006).[1] Having reconsidered this matter in light of *Davis* and having reviewed the parties' supplemental briefs filed after remand, we now vacate that portion of our prior opinion relating to the Confrontation Clause issue, 210 Ariz. 24, ¶¶ 18-22, 107 P.3d at 355-56,

---

[1]We infer from our supreme court's order of remand and its reference solely to the *Davis* case that our reconsideration now is limited to only that portion of our prior opinion that addressed the Confrontation Clause issue. *See State v. Alvarez*, 210 Ariz. 24, ¶¶ 18-22, 107 P.3d 350, 355-56 (App. 2005). Therefore, we do not address any other issues raised in Alvarez's petition for review or argued on review in the supreme court.

replace it with this supplemental opinion, and again affirm Alvarez's convictions and sentences.

**I**

¶3 We briefly review the facts bearing on the Confrontation Clause issue. In so doing, we view the evidence in the light most favorable to upholding the convictions, *see State v. Greene*, 192 Ariz. 431, ¶ 12, 967 P.2d 106, 111 (1998), and in the light most favorable to the proponent of the challenged evidence, here the state. *See State v. Petzoldt*, 172 Ariz. 272, 276, 836 P.2d 982, 986 (App. 1991).

¶4 In the mid-afternoon of June 10, 2001, Deputy Othic was on routine patrol in "a low-traffic area," driving westbound on Irvington Road. As he approached Butts Road, Othic saw a man (the victim, S.) "staggering back and forth" in the northbound lane of Butts Road. Believing that S. might be intoxicated, Othic made a U-turn and then drove down Butts Road toward him. As Othic approached, he noticed that S. was "bleeding badly from the face." The blood covered "a majority of his face" and also was "all in his hair." Othic immediately requested medical assistance on his radio, and as he exited his patrol car, S. "collapsed on the back of [the car's] trunk."

¶5 Othic testified that during his approximate one-minute encounter with S., Othic "basically asked him two questions, his name and what happened." Because at first S. "wasn't responding" at all, Othic "kept asking him his name." S. eventually gave his first name and, when Othic asked him what had happened, S. stated three men had "jumped him"

3

and had taken his 1995 white Suzuki.[2]  According to Othic, S. "was in pain," "kept going in and out of consciousness," "kept asking for a doctor" and was "talking real low."  S. then "lost consciousness" shortly before medical personnel arrived, and Othic had no further contact with him.  S. died two days later.  An autopsy revealed that his death was caused by multiple blunt force injuries to his head and brain damage.

## II

¶6        The Confrontation Clause issue first arose in this case in September 2004, several months after Alvarez's appeal came at issue and after the United States Supreme Court issued its opinion in *Crawford*.[3]  At that time, Alvarez merely filed with this court a notice of supplemental authority, citing *Crawford*.  In our first opinion, we addressed and rejected any Confrontation Clause argument on the merits, without discussing whether Alvarez had properly preserved that issue below.  210 Ariz. 24, ¶¶ 18-22, 107 P.3d at 355-56.  As the state points out, however, at trial Alvarez objected to admission of Deputy Othic's testimony "regarding the victim's out-of-court statements *solely* on the evidentiary

_____

[2]Police ultimately learned that on the date in question, S. actually had been driving a white Chevrolet Cavalier rental vehicle, not a Suzuki, and previously had reported his registered vehicle, a Suzuki, stolen in May 2001.  On the same day that Deputy Othic found S. staggering on the road, Alvarez and two other men were found in the Cavalier, detained in Nogales at the port of entry to Mexico, and later arrested and charged with the crimes committed against S.

[3]Both *Crawford* and *Davis* apply to this case because Alvarez's convictions were not yet final when those decisions were issued.  *See Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 n.6 (1987); *State v. King*, 212 Ariz. 372, n.2, 132 P.3d 311, 313 n.2 (App. 2006).

ground that it was 'hearsay' and did not qualify as an 'excited utterance.'" Neither at trial nor in his appellate briefs filed in this court did Alvarez raise any Sixth Amendment objection to admission of that evidence. *See State v. Rankovich*, 159 Ariz. 116, 122 n.3, 765 P.2d 518, 524 n.3 (1988) (failure to raise or argue claim in opening brief "constitutes abandonment and waiver of that issue"); *cf. State v. King*, 212 Ariz. 372, ¶ 14, 132 P.3d 311, 314 (App. 2006) (defendant's objection below that "he would not be able to cross-examine" unavailable witness whose hearsay statements to 911 operator were admitted at trial "were sufficient to avoid waiver of his Confrontation Clause argument").

¶7        A "hearsay" objection does not preserve for appellate review a claim that admission of the evidence violated the Confrontation Clause. *See State v. Hernandez*, 170 Ariz. 301, 306-07, 823 P.2d 1309, 1314-15 (App. 1991); *see also State v. Huerstel*, 206 Ariz. 93, ¶ 29, 75 P.3d 698, 707 (2003) (hearsay rule and Confrontation Clause are not the same and serve different purposes). By failing to object below on Sixth Amendment grounds, Alvarez "forfeit[ed] the right to obtain appellate relief unless [he] prove[s] that fundamental error occurred." *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005); *see also State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005) ("Fundamental error review . . . applies when a defendant fails to object to alleged trial error."); *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987) (doctrine of waiver "applies to constitutional error"). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such

5

magnitude that the defendant could not possibly have received a fair trial.'" *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).

¶8　　As the appellant, Alvarez bears "the burden of persuasion in fundamental error review" and "must first prove error." *Id*. ¶¶ 19, 23; *see also State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991) ("Before we may engage in a fundamental error analysis, . . . we must first find that the trial court committed some error."). And, assuming any error is established, "[i]n order to obtain reversal based on unobjected-to trial error, a defendant must show 'both that fundamental error exists and that the error in [his or her] case caused . . . prejudice.'" *State v. Ruggiero*, 211 Ariz. 262, ¶ 25, 120 P.3d 690, 696 (App. 2005), *quoting Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607 (*alteration in Ruggiero*); *see also State v. Munninger*, No. CR-03-0328, ¶¶ 4, 10, 2006 WL 2328566 (Ariz. Ct. App. Aug. 8, 2006).

### III

¶9　　Applying those principles here, we begin our analysis by examining whether, in light of *Davis*, the trial court committed constitutional error in admitting Deputy Othic's testimony about what the victim had told him at the scene.[4] Alvarez argues the victim's

---

[4]We do not revisit our prior ruling that the trial court did not err in overruling Alvarez's hearsay objection and admitting as an excited utterance the victim's statement to Deputy Othic. *Alvarez*, 210 Ariz. 24, ¶¶ 13-17, 107 P.3d at 354-55. That ruling, however, does not resolve the Confrontation Clause issue. *See State v. Parks*, 211 Ariz. 19, ¶¶ 35, 41, 116 P.3d 631, 638, 640 (App. 2005) (rejecting state's argument that an excited utterance

6

"can never be testimonial" under *Crawford*); *see also King*, 212 Ariz. 372, ¶ 22, 132 P.3d at 316 ("[T]he mere fact that statements may be considered excited utterances does not automatically remove them from Confrontation Clause analysis."). Rather, "[w]hether an

"statement about three persons attacking him and taking his car was testimonial in nature and was unduly prejudicial." According to Alvarez, *Davis* requires reversal and preclusion of that evidence. In contrast, the state argues no error occurred "because the victim's statements to Deputy Othic are clearly 'nontestimonial' under *Crawford* and *Davis*." In addition, the state argues, any alleged error in the admission of that evidence was neither fundamental nor prejudicial. We agree with the state on all points.

¶10　　　　In *Crawford*, the Supreme Court held the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54, 124 S. Ct. at 1355; *see also Davis*, ___ U.S. at ___, 126 S. Ct. at 2273. Although the Court in *Crawford* decided to "leave for another day any effort to spell out a comprehensive definition of 'testimonial,'" 541 U.S. at 68, 124 S. Ct. at 1374, it described a "core class of 'testimonial' statements" that included, inter alia, "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' . . . [and] [s]tatements taken by police officers in the course of interrogations." *Id*. at 51-52, 124 S. Ct. at 1364, *quoting* brief in case; *see also State v. Parks*, 211 Ariz. 19, ¶¶ 28, 50, 116 P.3d 631, 637, 642 (App. 2005).

---

excited utterance will be testimonial . . . depends on the circumstances existing when the statement was made." *Parks*, 211 Ariz. 19, ¶ 40, 116 P.3d at 639.

¶11        In *Davis*, the Supreme Court attempted to clarify the distinction between testimonial and nontestimonial statements for purposes of the Confrontation Clause. ___ U.S. ___, 126 S. Ct. at 2273. In reviewing the two companion cases before it, the Court concluded in one (*Davis*) that a domestic violence victim's "frantic," telephonic statements in response to a 911 emergency operator's questions were not testimonial and, therefore, not subject to the Confrontation Clause, *id*. at ___, 126 S. Ct. at 2277, whereas in the second case (*Hammon*) the Court characterized as testimonial a domestic battery victim's written statements in an affidavit given to a police officer during a post-incident, investigative interrogation. *Id*. at ___, 126 S. Ct. at 2277-78. In *Davis*, the Court observed, the victim "was speaking about events *as they were actually happening*, rather than 'describ[ing] past events,'" and, viewed objectively, the "primary purpose [of the victim's interrogation] was to enable police assistance to meet an ongoing emergency." *Id*. at ___, ___, 126 S. Ct. at 2276, 2277, *quoting Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999) (plurality opinion) (alteration in *Davis*). The Court contrasted that situation with that presented in *Hammon*, in which "the interrogation was part of investigation into possibly criminal past conduct," "[t]here was no emergency in progress," and "[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." *Id*. at ___, 126 S. Ct. at 2278.

9

¶12     Although the Court in *Davis* again did not "attempt[] to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial," the Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id*. at ___, 126 S. Ct. at 2273-74. The Court also noted that it did not "imply . . . that statements made in the absence of any interrogation are necessarily nontestimonial." *Id*. at ___ n.1, 126 S. Ct. at 2274 n.1. And the Court rejected any "implication that virtually any 'initial inquiries' at the crime scene will not be testimonial," but expressly "d[id] not hold the opposite—that *no* questions at the scene will yield nontestimonial answers." *Id*. at ___, 126 S. Ct. at 2279. Indeed, the Court observed, various exigencies at the scene "may *often* mean that 'initial inquiries' produce nontestimonial statements." *Id*.

## IV

¶13     According to Alvarez, this case is closer to *Hammon* and *Crawford* than to *Davis*. Unlike the situation in *Davis*, Alvarez argues, the victim's statement here was not made during an ongoing crime or crisis, but rather, Othic's "questioning occurred hours after

10

the emergency."[5] "Viewed objectively," Alvarez further asserts, "the officer's questions were designed to produce information useful in a prosecution" and were solely "geared to discover what had happened in the past." According to Alvarez, the victim's "inculpatory answer in response to [Othic's] open-ended questioning" constituted "a brief but nonetheless narrative report of a past crime." Therefore, Alvarez argues, the statement must be considered testimonial because, viewed objectively, the brief exchange between Othic and the victim "related only to past events" and "had nothing to do with medical treatment or injuries."

¶14        The question of whether a statement is testimonial "is a factually driven inquiry and must be determined on a case-by-case basis." *State v. Parks*, 211 Ariz. 19, ¶ 43, 116 P.3d 631, 640 (App. 2005).[6] That determination "depends on the circumstances

---

[5]Alvarez does not point to any evidence in the record that reflects either the amount of time that had elapsed between the assault and the victim's statement to Othic, or the distance between the two locations where those events occurred. The record reflects, however, that the assault on the victim occurred approximately 1100 feet from where Othic had contacted him.

[6]After granting the state's petition for review in *Parks*, our supreme court remanded the case to Division One of this court for reconsideration in light of *Davis*, as it did in this case. On remand, Division One reaffirmed its reversal of the defendant's manslaughter conviction after again concluding the deceased witness's post-incident statements to police officers were testimonial and had been improperly admitted at trial over defendant's objection on both hearsay and Confrontation Clause grounds. *State v. Parks, supp. op.*, 2006 WL 2624080 (Ariz. Ct. App. Sept. 14, 2006); *see also Parks*, 211 Ariz. 19, ¶ 16, 116 P.3d at 635. Although Alvarez does not cite or rely on *Parks*, it is readily distinguishable from this case based on the nature, timing, and surrounding circumstances of the hearsay statements involved. In addition, as the court in *Parks* observed in its original opinion, "[s]tatements made by witnesses to police so the police may secure their own or the witnesses' safety, render emergency aid, or protect the security of the crime scene may not

11

existing when the statement was made" and takes into account "the totality of the circumstances surrounding [the statement]." *Id*. ¶¶ 40, 52. Viewing all the surrounding circumstances in context here, we are not persuaded by Alvarez's argument that the victim's statement to Othic was testimonial and, therefore, subject to the Confrontation Clause. *See Davis*, ___ U.S. at ___, 126 S. Ct. at 2273 (nontestimonial hearsay evidence "is not subject to the Confrontation Clause").

¶15    Although not entirely clear, the Court in *Davis* apparently shifted the focus from the motivations or reasonable expectations of the declarant to the primary purpose of the interrogation. *See* ___ U.S. at ___, ___, 126 S. Ct. at 2273-74, 2274 n.1 (Court's holding in *Davis* emphasized "the primary purpose of the interrogation" as the lynchpin differentiating testimonial from nontestimonial statements, but Court also stated, "even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate"); *see also State v. Hooper*, No. 31025, 2006 WL 2328233, at *5 (Idaho Ct. App. 2006) (*Davis* "focuses not at all on the expectations of the declarant but on the content of the statement, the circumstances under which it was made, and the interrogator's purpose in asking questions."); Ariana J. Torchin, *A Multidimensional Framework for the Analysis of Testimonial Hearsay Under Crawford v. Washington*, 94 Geo. L.J. 581, 589 (2006) ("[I]t is clear that testimonial

---

be testimonial." *Id*. ¶ 48. And the *Parks* court found our original opinion in this case consistent with "[t]he conclusions [Division One] dr[e]w from *Crawford*." *Id*. ¶ 51.

hearsay embraces both the perspective of the declarant and the government."). But, under either construct, the statement at issue here is nontestimonial.

¶16 First, assuming Othic's brief questioning of the victim during his one-minute encounter with him constituted "interrogation,"[7] nothing in the record suggests the victim "would [have] reasonably expect[ed] [his statement] to be used prosecutorially or . . . made [it] under circumstances that would lead an objective witness reasonably to believe the statement would be available for use at a later trial." *Parks*, 211 Ariz. 19, ¶ 36, 116 P.3d at 639; *see also Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364; *King*, 212 Ariz. 372, ¶¶ 19-21, 132 P.3d at 315-16; *State v. Rodriguez*, No. 2005AP1265-CR, 2006 WL 2088161 (Wis. Ct. App. July 28, 2006) (domestic violence victim's excited utterances to investigating officer, in which she described incident in detail and identified assailant, deemed nontestimonial). The record does not reflect that the semi-conscious victim was even aware that the person to whom he spoke was a law enforcement officer. As the state

---

[7]"[A]n interrogation, as that term is used in *Crawford*, does not turn on whether police questioning occurred during a field investigation or can be labeled formal or structured." *Parks*, 211 Ariz. 19, ¶ 46, 116 P.3d at 641; *see also id.* ¶ 49; *King*, 212 Ariz. 372, ¶ 34, 132 P.3d at 318. The Court in *Crawford* used the term "interrogation" in its "colloquial, rather than any technical legal, sense." 541 U.S. at 53 n.4, 124 S. Ct. at 1365 n.4. But when the Court stated in *Crawford* that "'interrogations by law enforcement officers fall squarely within [the] class' of testimonial hearsay, [the Court] had immediately in mind . . . interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Davis*, ___ U.S. at ___, 126 S. Ct. at 2276, *quoting Crawford*, 541 U.S. at 53, 124 S. Ct. at 1365 (alteration and omission in *Davis*). Deputy Othic's brief questioning of the victim does not seem to fall within that category.

correctly points out, S. "did not identify *any* of the persons who 'jumped' him and took his vehicle," "provided no details concerning what those persons did to him," and "never mentioned, nor implicated, [Alvarez]." Nor did Deputy Othic ask for any such information.

¶17     As the Wisconsin court in *Rodriguez* noted, "[v]ictims' excited utterances to law-enforcement officers responding to either an on-going or recently completed crime, serve, as with the 911-call, a dual role—the dichotomy between finding out what *is* happening as opposed to recording what *had* happened." *Id.* ¶ 23. The court in that case concluded, "given [the victims'] contemporaneously endured trauma, it cannot be said that objectively they said what they said to the officers with a conscious expectation that their words would somehow have the potential for use in court against Rodriguez." *Id.* ¶ 27. The same can be said with respect to S.'s statement to Deputy Othic in this case. As in *Rodriguez*, neither the statement itself nor the circumstances surrounding it suggests that S. "overtly or covertly intended . . . to implicate an accused at a later judicial proceeding," but rather merely spoke in "a burst of stress-generated words whose main function [was] to get help and succor, or to secure safety." *Id.* ¶ 26.

¶18     Second, viewed objectively, the circumstances under which S. made his statement "indicat[e] that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency," rather than "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, ___ U.S. at ___, 126 S. Ct. at

14

2273-74. Without question, an investigating officer's asking a victim at the scene "what happened" might often lead to testimonial answers, depending on all the circumstances. *See State v. Mechling*, 633 S.E.2d 311, 323 (W.Va. 2006) (victim's statements in response to deputies' interrogation deemed testimonial when "[t]here was no emergency in progress when the deputies arrived" and "the purpose of the deputies' interrogation was to investigate a possible crime"). But it certainly cannot be said that such a question always seeks and results in a testimonial response. *See Vinson v. State*, Nos. 01-05-00784-CR, 01-05-00785-CR, 2006 WL 2291000, at *7 (Tex. Crim. App. Aug. 10, 2006) (statements by domestic assault victim, including her identification of assailant, in response to investigating officer's question, "what happened," deemed nontestimonial; "the deputy's asking only what had happened was tantamount to his having asked whether an emergency existed or whether [the victim] needed assistance"); *see also United States v. Clemmons*, No. 05-4235, 2006 WL 2472758, at *3 (8th Cir. Aug. 29, 2006) (victim's statements to investigating officer who responded to scene nontestimonial when "[t]he circumstances, viewed objectively, indicate that the primary purpose of [the officer's] questions was to enable him to assess the situation and to meet the needs of the victim"); *cf. Torchin, supra*, at 606 ("If it is clear that the law enforcement officer is gathering evidence or building leads to further investigate the case, any incriminating information that the officer elicits from the declarant should be considered testimonial, whether the agent casually asked 'what happened,' or chimed in with leading questions.").

¶19       Here, S. was found staggering in a roadway, bleeding profusely from his head, and slipping in and out of consciousness, prompting Deputy Othic to immediately summon medical assistance. S.'s injuries obviously were serious; indeed, they resulted in his death within forty-eight hours. We disagree with Alvarez's contentions that these facts do not reflect any "ongoing emergency," *Davis*, ___ U.S. at ___, 126 S. Ct. at 2273, and that Othic's asking S. "what happened" bore no relation to that emergency or S.'s injuries. Although the criminal activity that resulted in S.'s injuries and the ensuing charges against Alvarez had ended, the emergency that those events set in motion was very much ongoing. Under these circumstances, "[a]ny reasonable observer would understand that [the victim] was facing an ongoing emergency and that the purpose of the interrogation was to enable police assistance to meet that emergency." *Clemmons*, 2006 WL 2472758, at *3. "The Confrontation Clause does not prohibit questioning when, as here, its purpose, viewed objectively, is to ascertain if there is an ongoing emergency." *Vinson*, 2006 WL 2291000, at *7, *citing Davis*, ___ U.S. at ___, 126 S. Ct. at 2276.

¶20       In sum, the trial court's admission of Othic's testimony about the victim's statement at the scene did not violate Alvarez's Confrontation Clause rights. Finding no error in the court's evidentiary ruling, we need not address whether any alleged error was fundamental and prejudicial.[8]

_____

[8]We note, however, that Alvarez claims he was prejudiced because S.'s statement was the only evidence that "made [him] a participant in the assault and defeated his defense of mere presence." But as the state correctly notes, it is just as likely Alvarez "was convicted

16

**V**

**¶21**   Alvarez's convictions and sentences are affirmed.


            _____
            JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

---

because he and his two accomplices were found inside [S.'s] stolen rental car within a few hours after [S.] was attacked, [Alvarez] repeatedly lied about how they came into possession of the car, told [a detective] that he had never seen [S.], subsequently admitted being present during the robbery and beating, and [S.'s] blood was found on [Alvarez's] shoes."