NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

WILLIE EARL KEY, *Appellant*.

No. 1 CA-CR 14-0789
FILED 10-29-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-423866-001 DT
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED**

COUNSEL

Law Office of Nicole Farnum, Phoenix
By Nicole Farnum
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Adele G. Ponce
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia A. Orozco joined.

---

**P O R T L E Y**, Judge:

¶1        Defendant Willie Earl Key challenges his convictions and sentences for misconduct involving weapons, unlawful discharge of a firearm, aggravated assault, and resisting arrest.  He argues the trial court erred in admitting recordings of 9-1-1 telephone calls, and that the judge who conducted settlement discussions should not have presided over the trial.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        A fight broke out at the Terrace Park apartment complex on May 26, 2013, and escalated to a shooting.  The residents who called 9-1-1 reported that an African-American man was carrying a laser pistol and gunshots were being fired; the man was between five feet, seven inches and five feet, nine inches tall; and he was huskily built, bald, between thirty and forty years old, and was wearing pajama bottoms, but no shoes or shirt.

¶3        After police officers arrived, they found a wounded man with a gunshot injury to his leg.  During the search for the gunman, Officer Robles saw a barefoot and shirtless man matching the 9-1-1 description, who was later identified as Key, running with his right hand at his waistband.  Officer Robles stopped Key and drew his weapon.  Key let go of his waistband and raised his hands, and a gun moved down his right pajama leg and fell to the ground.  When Key ignored the officer's instructions, Officer Robles radioed for assistance, holstered his gun, and took out his Taser.

¶4        Officers Gombar and Zamora responded, and saw Officer Robles holding his Taser and giving Key verbal instructions.  Key was aggressive, yelling, moving around, and not following the instructions.  When Key assumed a fighting stance, Officer Gombar tackled him, and the officers attempted to restrain Key, who was kicking and fighting.  Only after Officer Gombar used a Taser were the officers able to control Key.

2

¶5        Once Key was handcuffed and in custody, the .45 caliber gun with a laser sight, which had slipped down his pajama pants leg, was collected.  The crime scene technicians also collected other items, including a .45 caliber shell that had been fired from Key's gun.

¶6        Key was subsequently indicted for two counts of aggravated assault, misconduct involving weapons, unlawful discharge of a firearm, threatening or intimidating, and resisting arrest.  The State later amended the indictment by dismissing one aggravated assault charge and the threatening or intimidating charge.  The case went to trial and after the presentation of the evidence, closing arguments, and jury instructions, the jury convicted Key on all counts.  The court then held a Phase II hearing, and after argument and instructions, the jury found beyond a reasonable doubt that the unlawful discharge of a firearm was a dangerous offense, and the unlawful discharge offense involved the infliction or threatened infliction of a serious physical injury, an aggravating circumstance.

¶7        Key was subsequently sentenced to concurrent terms of prison for the convictions that did not exceed three and one-half years, and was given 529 days of presentence incarceration credit.

¶8        We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1), 13–4031, and –4033(A).[1]

## DISCUSSION

¶9        Key raises two issues on appeal.  First, he argues the admission of the 9-1-1 telephone calls violated the Confrontation Clause and was unduly prejudicial.  Second, Key argues his due process rights were violated when the trial judge conducted a settlement conference before trial and did not recuse herself from being the trial judge.

## I.    Telephone Calls

¶10        Before trial, the State filed a motion in limine requesting a ruling that the 9-1-1 telephone calls were admissible.  The court held a hearing and determined the recordings were admissible.  All three recordings were subsequently played for the jury.

---

[1] We cite the current version of the applicable statutes absent changes material to this decision.

### A. The Shooting Victim's Call

**¶11** Key now contends that the last two minutes of the telephone call made by the shooting victim should have been precluded as prejudicial under Arizona Rule of Evidence ("Rule") 403 because the victim can be heard crying or moaning. However, both during the hearing and at trial, Key's objections were limited to authentication and hearsay. *See State v. Alvarez*, 213 Ariz. 467, 469, ¶ 7, 143 P.3d 668, 670 (App. 2006) (noting that a hearsay objection does not preserve a Confrontation Clause objection for appellate review).

**¶12** We generally review a trial court's evidentiary ruling for an abuse of discretion, and we will not reverse the ruling absent unfair prejudice. *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6, 995 P.2d 281, 283 (App. 2000) (citations omitted). If a party does not, however, object at trial, or make the correct objection, we review for fundamental prejudicial error. *State v. Valverde*, 220 Ariz. 582, 585, ¶ 12, 208 P.3d 233, 236 (2009); *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005); *Alvarez*, 213 Ariz. at 469, ¶ 7, 143 P.3d at 670.

**¶13** Although Key contends the court should have precluded a portion of the recording under Rule 403, he never made that objection. Additionally, a trial court has broad discretion in determining if evidence is admissible because the court "is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice." *State v. Connor*, 215 Ariz. 553, 564, ¶ 39, 161 P.3d 596, 607 (App. 2007) (quoting *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21, 985 P.2d 513, 518 (App. 1998)). Here, because Key did not make a Rule 403 objection, the court did not have to determine if the probative value of the last two minutes of the victim's phone call was outweighed by any prejudicial effect. Accordingly, the trial court did not err in admitting the recording of the victim's telephone call.

### B. Call Describing the Shooter

**¶14** Key also objects to the admission of the telephone call made by a lady who reported the sounds of gunshots and described the shooter. In making its pre-trial ruling, and despite the fact that no Confrontation Clause objection was raised, the court found the telephone call nontestimonial and ruled it did not violate the Confrontation Clause. And, as noted, we review an evidentiary ruling to which Key did not object for fundamental error, *see Valverde*, 220 Ariz. at 585, ¶ 12, 208 P.3d at 236, *Alvarez*, 213 Ariz. at 469, ¶ 7, 143 P.3d at 670, mindful that we normally

review rulings that implicate the Confrontation Clause de novo. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006) (citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999)).

**¶15** The Confrontation Clause in the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to "confront[] [] the witnesses against him." U.S. Const. amend. VI. Confrontation means more than being allowed to confront, or see, the witness testifying in the courtroom, and includes the right to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The confrontation right also precludes the government from using out-of-court testimonial statements made by witnesses who are not available for cross-examination unless it can be shown that a defendant had a prior opportunity to cross-examine that witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

**¶16** A statement is testimonial if it is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *State v. Boggs*, 218 Ariz. 325, 337, ¶ 56, 185 P.3d 111, 123 (2008) (quoting *Crawford*, 541 U.S. at 51). In examining whether a 9-1-1 call to the police or operator is testimonial or nontestimonial, the Court in *Davis v. Washington*, stated:

> Statements are nontestimonial when made . . . under circumstances objectively indicating that the primary purpose . . . is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822 (2006). As a result, the Court found that a 9–1–1 call is generally nontestimonial because it "is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.* at 827 (alterations in *Davis*).

**¶17** Then, in *Michigan v. Bryant*, the Court provided the analysis to determine when the "primary purpose" of any questioning or interrogation is to help police meet an ongoing emergency. 562 U.S. 344, 359 (2011). The Court stated a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* In fact, "the existence of an ongoing emergency at the time of an encounter between an individual and the police is among the most important circumstances informing the primary purpose of an

interrogation." *Id.* at 361 (internal quotation marks omitted). It is "relevant to determining the primary purpose" of the questioning "because an emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" *Id.* (quoting *Davis*, 547 U.S. at 822) (alteration in original). "[I]t focuses them on ending a threatening situation." *Id.* (internal quotation marks and citation omitted). As a result, "because the prospect of fabrication in statements given for the primary purpose of resolving th[e] emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Id.* Accordingly, statements made during a 9-1-1 call before the ongoing emergency is resolved are more likely to be nontestimonial.

¶18        Based on the Court's analytical framework, the caller in this case described an ongoing emergency – she heard shots – and described the person she thought to be the shooter to enable the police to respond. Her telephone call was made two minutes after the victim's call and less than two minutes after the shooting. The questions the 9-1-1 operator asked were for the purpose of determining the nature of the emergency, the location of the incident, the type of weapons, possible injuries, and a description of the perpetrator in order to dispatch police to the actual location. Because the caller's 9-1-1 statements were describing an ongoing emergency that focused on a threatening situation, the statements were nontestimonial and their admission, as a result, does not violate the Confrontation Clause. *Id.* Consequently, the court did not err by finding that the second telephone call was admissible.

## II.    Settlement Conference

¶19        Key also contends the trial judge participated in a settlement conference and did not recuse herself under Arizona Rule of Criminal Procedure 17.4. The record reveals that the trial judge learned at a pretrial conference that Key had been offered a plea agreement, was sent to Judge Warren Granville to enter a plea, and then changed his mind while Judge Granville was explaining that Key could theoretically be sentenced to a year in jail as a term and condition of probation after any prison sentence. The trial judge then clarified how she would sentence Key if he wanted to take the offer. And, after giving Key the opportunity to privately talk to his lawyer, the court clearly stated that "if you want to go to trial, we'll start trial on Thursday."

¶20            The pretrial hearing continued and turned into a discussion about the nuances of the plea offer and what each party wanted or did not want, but the court never suggested that Key should take the plea offer. Key, however, makes a general assertion that the judge learned facts about the case that she would not have otherwise heard. Key failed to specify any such facts, and no incriminating statements or facts were either raised during the plea discussion or used at trial.

¶21            Key argues the trial judge was required to recuse herself because he never consented to her clarification of the sentencing options that had caused him to reject the plea or to the subsequent on-the-record discussions about the plea and the resulting ramifications. We disagree. Even though the parties did not formally consent to the trial judge participating in their on-the-record discussions, they continued with the discussions with the judge present and did not object at any time. As a result, Key implicitly consented to the trial judge participating, knowing that if there was no agreement, trial would begin as scheduled. Moreover, the parties knew under Arizona Rule of Evidence 410 that the plea, plea discussion, and related statements could not be used at trial; and the rule was not violated. As a result, the fact that an informal unsuccessful settlement discussion broke out during the pre-trial conference did not require the judge to recuse herself.

¶22            Moreover, Key never asked the judge to recuse herself before trial nor sought to file a motion for change of judge for cause. As a result, we only review his argument for "fundamental, prejudicial error." *State v. Granados*, 235 Ariz. 321, 326, ¶ 13, 332 P.3d 68, 73 (App. 2014) (citations omitted). Key has failed to demonstrate any fact that would imply that the trial judge was not impartial after the impromptu settlement discussions. *See State v. Smith*, 203 Ariz. 75, 79, ¶ 13, 50 P.3d 825, 829 (2002) (a trial judge is presumed to be impartial). And we have not found any fact that could be remotely described as error, much less fundamental prejudicial error as a result of the judge sitting through the unsuccessful settlement discussions and being the trial judge. Consequently, the judge did not violate Key's due process rights by failing to recuse herself after the settlement discussions.

## CONCLUSION

**¶23**      Based on the foregoing, we affirm Key's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama