NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY KYLE MAYFIELD, *Appellant.*

No. 1 CA-CR 23-0211
FILED 05-16-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202200069
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Jacob R. Lines
*Counsel for Appellee*

Jill L. Evans, Flagstaff
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

**C R U Z**, Judge:

¶1          Anthony Kyle Mayfield appeals his convictions and sentences for theft, second-degree burglary, theft of means of transportation, and criminal damage.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          We view the evidence in the light most favorable to upholding the jury's verdict. *State v. Tamplin*, 195 Ariz. 246, ¶ 2 (App. 1999). R.S., who lived in Bullhead City, left Arizona for several weeks in 2021. When he returned in early December, R.S. found that his fifth-wheel travel trailer, in which he lived, and his white utility trailer and yellow storage container had been broken into, his pickup truck, tools, ammunition, and other property had been stolen, and his storage container and trailers had been damaged.

¶3          The next day, Mayfield returned to R.S.'s property while R.S. was away and stole more tools.  Later that morning, R.S., who was driving, saw his stolen truck parked in a field near his property.  R.S. drove towards the truck, and it took off.  R.S. followed.  Mayfield, driving the truck, eventually drove into the desert and got stuck in the sand.  He fled, and as he did so, he looked at R.S., and the two made eye contact.  Mayfield escaped, but R.S. detained Mayfield's female passenger, M.J., until police arrived.

¶4          The truck bed contained the tools Mayfield stole from R.S. earlier in the day.  Several days later, R.S. searched online for "known car thieves" in Bullhead City and found a photograph of Mayfield, who he recognized as the driver of his truck.  R.S. later identified Mayfield at a pretrial hearing and trial.

¶5          A grand jury indicted Mayfield on one count of theft, a class 2 felony (count 1), one count of second-degree burglary, a class 3 felony (count 2), one count of theft of means of transportation, a class 3 felony (count 3), and one count of criminal damage, a class 6 felony (count 4).  After the trial, a jury convicted Mayfield as charged.  The jury found as aggravating factors: 1) the value of the property taken or damaged (counts 1-4); 2) the victim suffered physical, emotional or financial harm (counts 1-4); and 3) Mayfield committed the offenses for pecuniary gain (counts 1-3). *See* Arizona Revised Statutes ("A.R.S.") section 13-701(D)(7).  The superior court found that Mayfield had five historical felony convictions.

**¶6** The superior court sentenced Mayfield as a category three repetitive offender to aggravated sentences of 28.5 years in prison with credit for 369 days of presentence incarceration for count 1, 20.5 years in prison for count 2, 20.5 years in prison for count 3, and the presumptive sentence of 3.75 years in prison for count 4. The court ordered Mayfield to serve his sentences consecutively.

**¶7** Mayfield timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.      Invited Error

**¶8** Mayfield first argues the superior court erred by admitting R.S.'s testimony on cross-examination that he identified Mayfield's photograph from a list of "known car thieves" and failing to sua sponte declare a mistrial. The State argues that the invited error doctrine precludes review because Mayfield's counsel asked the question about R.S.'s internet sleuthing, and R.S.'s answer was responsive to it. We review mixed questions of fact and law de novo. *State v. Mitcham*, 256 Ariz. 104, 114, ¶ 42 (App. 2023).

**¶9** Before trial, Mayfield moved, unsuccessfully, to preclude R.S.'s identification of him at trial, claiming that the identification was tainted because R.S. did internet research and found a photograph of him online. Defense counsel argued this theory in his opening and closing statements.

**¶10** During cross-examination, defense counsel asked R.S. whether he had done any online research about the case. In response, R.S. stated that he had found Mayfield's photograph with a Google search into "known car thieves" in the area. Specifically:

> [Defense counsel]: After this December 8th, you did some investigation. So you went to pawnshops, correct?
>
> [R.S.]: Well, would you like me to elaborate?
>
> [Defense counsel]: I just want to know, so you did go to pawnshops or not?
>
> [R.S.]:        Yes.

[Defense counsel]: And you were looking for your property there?

[R.S.]: Yes.

[Defense counsel]: Okay. You researched online after the fact to try to find all the information about possible suspects, is that correct?

[R.S.]: Yes.

[Defense counsel]: And did you observe any potential suspects through the gossip and online? Not who, just did you see were there any potential suspects that you found online?

[R.S.]: When I Googled known car thieves in Bullhead —

[Defense counsel]: Objection. Just did you find a person? Did you find any names?

[The State]: Objection, Your Honor. He asked the question and the victim's trying to answer it. He opened the door.

[The Court]: You can answer the question.

[R.S.]: When I Googled known car thieves in the Bullhead City area, there was a list of maybe 10 or 12 different persons on that list, and they had photographs. And one of them happened to be Anthony Kyle Mayfield, and he looked exactly like the guy that was in my truck. Prior to it a few days — because I didn't have a chance to look as I was moving my stuff off the property. So it was probably 2 or 3 days later when I actually got on Google and looked and was trying to find my stolen stuff at the pawnshop, looked up known car thieves in the Bullhead area.

[Defense counsel]: But did that solidify what you saw on the scene?

[R.S.]: Well it helped — when I identified him on the scene, made eye contact and knew the face that I was looking at, yes. Later when I did see about 12 or 15 pictures on there, I was looking through and this is the guy that matched the

exact person I'd seen in my vehicle that day that left the scene and fled up the hill.

[Defense counsel]:   The question is, is [sic] did that picture online help you identify my client?

[R.S.]:        Absolutely.

[Defense counsel]:   It solidified your identification from the 8th, correct?

[R.S.]:        It gave me a name to put with the face that I saw that morning of the 8th, yes.

Later, the superior court and counsel discussed whether the court should give a limiting instruction to address R.S.'s testimony. The court stated it had "no problems with the defense opening the door and the auto thief photos came out. But I feel like I need to . . . give the jury a limiting instruction saying they cannot find guilt or innocence based on the testimony that [R.S.] saw auto thief pictures of various people, and only the evidence that's been provided in court. In other words, you can't use that to decide guilt or innocence." The court instructed the jury as follows:

> During trial you heard that [R.S.] did his own investigation on the internet, the topic of search and the results cannot be considered as evidence of guilt of any crime for which the defendant is now on trial.

¶11    Although Mayfield failed to state a specific ground for his objection, on appeal he argues the testimony was inadmissible under Arizona Rules of Evidence 403 and 404(b). *See* Ariz. R. Evid. ("Rule") 103(a)(1) (a party may only claim error in a ruling to admit evidence if the party "timely objects . . . and states the specific ground unless it was apparent from the context.").

¶12    Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Under Rule 404(b)(1), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

¶13    The invited error doctrine "prevents a defendant from introducing forbidden evidence and then seeking reversal based on its erroneous introduction." *State v. Stuard*, 176 Ariz. 589, 600 (1993) (collecting

cases). The defendant need not have purposefully introduced inadmissible testimony for the doctrine to apply. *Id.* at 600-01. Even if the evidence is introduced unintentionally, the doctrine applies if "responsibility for its introduction lies with defense counsel." *Id.* at 600. "A party . . . invites prejudicial testimony by being the first party to elicit the testimony." *State v. Lucero*, 223 Ariz. 129, 136, ¶ 20 (App. 2009). If "otherwise inadmissible testimony was given and was called for by the question of defense counsel, it would not be considered as reversible error even if prejudicial." *State v. Gallegos*, 99 Ariz. 168, 172 (1965). In determining the doctrine's scope, the witness's response "must be specifically responsive to the invitation." *State v. Wilson*, 185 Ariz. 254, 259 (App. 1996). "[I]f defense counsel invited trial error, strategically or carelessly, the defendant cannot obtain appellate relief even if the error was fundamental and prejudicial." *State v. Escalante*, 245 Ariz. 135, 145, ¶ 38 (2018).

**¶14**        Here, defense counsel specifically asked R.S. whether he had done online research into possible suspects. R.S.'s response that he had googled "known car thieves" in Bullhead City and found Mayfield's photograph was "specifically responsive" to counsel's question. *See Wilson*, 185 Ariz. at 259. Because Mayfield invited the error, he cannot obtain relief on appeal. *See Escalante*, 245 Ariz. at 145, ¶ 38.

II.        M.J.'s Statement

**¶15**        Mayfield next argues the superior court violated the rule against hearsay and his confrontation rights by admitting M.J.'s statement identifying him as the man who fled from the stolen truck. We review the admission of evidence as a present sense impression for an abuse of discretion. *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003). Because Mayfield did not object to M.J.'s statement based on the Confrontation Clause, we review that claim for fundamental, prejudicial error. *See State v. Robles*, 213 Ariz. 268, 272, ¶ 12 (App. 2006); *State v. Alvarez*, 213 Ariz. 467, 469, ¶ 7 (App. 2006) (a hearsay objection does not preserve for review a claim that admitted evidence violated the Confrontation Clause—the hearsay rule and Confrontation Clause are not the same and serve different purposes).

**¶16**        Officer Thomas Herline responded to a call about R.S.'s stolen truck. He arrested M.J., who R.S. had detained, and as he was placing her in his patrol vehicle, Officer Herline and M.J. observed Mayfield standing on a hill. M.J. spontaneously stated that the individual was "Anthony," without any question from Officer Herline. M.J. did not testify at Mayfield's trial. At trial, the prosecutor asked Officer Herline about M.J.'s statement, and defense counsel objected on hearsay grounds. The State

argued the statement was a present sense impression, and the superior court agreed and overruled the objection.

¶17            Mayfield argues M.J.'s statement was inadmissible as a present sense impression "because it was not based on information [M.J.] was perceiving at the time."

¶18            A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Rule 803(1).  The rule against hearsay does not exclude present sense impressions.  *Id.*  To qualify as a present sense impression, a statement must describe an event or condition that was observed by the declarant and must be made immediately after the event. *Tucker*, 205 Ariz. at 166, ¶ 43.

¶19            We find no abuse of discretion.  M.J.'s "Anthony" statement described an event or condition—that Anthony Mayfield was the man standing on the hill.  As M.J. observed the event or condition, she spontaneously identified Mayfield as "Anthony."  The superior court did not err by determining M.J.'s statement was a present sense impression.

¶20            Nor do we find fundamental, prejudicial error based on Mayfield's Confrontation Clause claim.  A defendant establishes fundamental error by first proving that trial error occurred.  *Escalante*, 245 Ariz. at 142, ¶ 21.  If he does so, the defendant must then show "that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial."  *Id.*  If a defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice, but if he "establishes the third prong, he has shown both fundamental error and prejudice."  *Id.*  "Prejudice is a fact-intensive inquiry, the outcome of which will depend . . . upon the type of error that occurred and the facts of a particular case." *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (citation and internal quotation marks omitted).  A defendant "must affirmatively prove prejudice and may not rely upon speculation to carry his burden."  *Id.* (citation and internal quotation marks omitted).

¶21            The Sixth Amendment's Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).   Non-testimonial statements do not implicate the

Confrontation Clause; states are free to craft hearsay rules governing which non-testimonial statements are admissible against a criminal defendant. *State v. King*, 212 Ariz. 372, 375-76, ¶¶ 18-19 (App. 2006) (citing *Crawford*, 541 U.S. at 68). Testimonial statements include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. Whether a statement is testimonial "is a factually driven inquiry and must be determined on a case-by-case basis" by considering "the totality of the circumstances surrounding [the statement]." *State v. Alvarez*, 213 Ariz. 467, 471, ¶ 14 (App. 2006) (citation and internal quotation marks omitted).

**¶22** Mayfield argues M.J.'s statement to Officer Herline was testimonial because it was not made to help police respond to an ongoing emergency but to accuse him and "was a solemn declaration . . . made for the purpose of establishing or proving some fact." We disagree. Even if there was no ongoing police emergency while Mayfield was absconding, the record indicates that M.J.'s statement was spontaneous and not made in response to any question from Officer Herline, and nothing in the record suggests that M.J. intended or believed her statement might later be used at trial. *See Crawford*, 541 U.S. at 52. Mayfield's rights under the Confrontation Clause were not violated.

III.    Mitigating Factor

**¶23** Mayfield next argues the superior court erred by rejecting the mitigating factor of "family support" when sentencing him. We review the superior court's sentencing decision for an abuse of discretion. *State v. Vermuele*, 226 Ariz. 399, 403, ¶ 15 (App. 2011).

**¶24** Mitigating factors include "[a]ny other factor that is relevant to the defendant's character or background or to the nature or circumstances of the crime *and* that the court finds to be mitigating." A.R.S. § 13-701(E)(6) (emphasis added). The consideration of mitigating circumstances is within the superior court's sole discretion. *State v. Long*, 207 Ariz. 140, 148, ¶ 41 (App. 2004). "In other words, the trial court need only consider evidence offered in mitigation; it need not find the evidence mitigating." *Id.*

**¶25** We find no abuse of discretion. Here, the superior court stated that the court had considered Mayfield's family support but did not find it mitigating because Mayfield continued to commit crimes despite

having the support of his family. Rejecting family support as a mitigating factor was solely within the court's discretion. *See id.*

IV. Consecutive Sentences

¶26 Finally, Mayfield argues the superior court violated the prohibition against multiple punishments by imposing consecutive sentences for burglary (count 2) and criminal damage (count 4). Because Mayfield failed to raise the issue in the superior court, we review it for fundamental error. *See State v. Martinez*, 226 Ariz. 221, 224, ¶ 17 (App. 2011). "[T]he imposition of an illegal sentence constitutes fundamental error." *Id.*

¶27 Section 13-116 prohibits consecutive sentences for multiple convictions for "[a]n act or omission which is made punishable in different ways by different sections of the laws." We "judge a defendant's eligibility for consecutive sentences by considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge . . ." *State v. Gordon*, 161 Ariz. 308, 315 (1989). "If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13-116." *Id.* We next "consider whether, given the entire 'transaction,' it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116." *Id.* Finally, we "consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences." *Id.*

¶28 Mayfield's burglary conviction required proof that Mayfield "enter[ed] or remain[ed] unlawfully in or on a residential structure with the intent to commit any theft or felony therein." A.R.S. § 13-1507. Mayfield's criminal damage conviction required proof that Mayfield "[r]ecklessly defac[ed] or damage[d] property of another person." A.R.S. § 13-1602(A)(1). The burglary only concerned R.S.'s fifth-wheel travel trailer, not the non-residential storage trailer and storage container that Mayfield separately damaged. The record also shows there was damage done inside the travel trailer that was not necessary to commit the burglary, including damage to R.S.'s DVD player and a shelf in the primary bedroom. And Mayfield's criminal damage caused R.S. to suffer additional financial harm beyond that inherent in the burglary. *See Gordon*, 161 Ariz. at 315. R.S. testified there was about $1240 in damage to the storage trailer and storage

container, and $115 in damage to his DVD player and shelf in the primary bedroom. We find no error in the court's imposition of consecutive sentences for burglary and criminal damage.

**CONCLUSION**

¶29 For the foregoing reasons, we affirm.

