IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ODECE DEMPSEAN HILL, *Appellant.*

No. 1 CA-CR 12-0627
FILED 11-04-2014

Appeal from the Superior Court in Maricopa County
No.  CR2011-143399-001
The Honorable Connie Contes, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**OPINION**

Chief Judge Diane M. Johnsen delivered the opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Patricia K. Norris joined.

---

J O H N S E N, Judge:

¶1        Odece Dempsean Hill was convicted of sexually assaulting a teenage girl, based in part on the testimony of a forensic nurse who related what the victim had told her in the emergency room three hours after the attack.  The victim died before Hill was brought to trial, and he argued the nurse's testimony violated his rights under the Confrontation Clause of the United States Constitution.  Guided by recent United States Supreme Court cases, we conclude the superior court did not err by admitting the testimony because the victim's statement was not testimonial.

**FACTS AND PROCEDURAL HISTORY**

¶2        Three assailants forced their way into a Mesa apartment early one morning in 2001, and one or more of them sexually assaulted a pregnant teenage girl.[1]  Shortly after the assailants departed, the victim was taken to an emergency room in premature labor.  There a registered nurse trained to perform forensic medical examinations examined her.  The nurse provided medical care and also collected samples of biological evidence using a rape kit.  The biological evidence collected from the victim matched DNA samples taken from the crime scene, leading to Hill's arrest ten years later.

¶3        Before Hill was brought to trial, the victim died from causes unrelated to the assault, and the State moved *in limine* to allow the nurse to testify about her examination of the victim and a statement the victim made to her at the outset of the examination.  Over Hill's objection that the testimony would violate the Confrontation Clause, the superior court granted the State's motion.

---

[1]        We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Hill.  *State v. Fontes*, 195 Ariz. 229, 230, ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶4　　At trial, the nurse testified that forensic nurses are registered nurses specially trained to perform forensic medical examinations of crime victims. She testified her examination of the victim had two components – providing medical care and collecting DNA evidence and other evidence of the assault. Before seeing the victim, the nurse spoke with a law enforcement officer to obtain basic demographic information about the victim and to learn why a forensic examination was called for, but no officer was present during the examination. The nurse documented the results of the examination on a form titled "Sexual Assault Examination Report" that provided step-by-step instructions for collecting evidence and required her to record the victim's medical and "assault history" and where on the victim's body she collected evidence. The nurse identified herself on the form as the "examiner" and the Mesa Police Department as the "agency involved." According to the form, the assault occurred at 2 a.m.; the examination began at 5 a.m. In addition to noting the manner and location of the various assaults the victim identified, the nurse recorded the victim's vital signs and the nature and location of pain she described. The nurse also recorded other elements of her physical examination of the victim, including, for example, neurological signs (the victim was "oriented"), and her breath and bowel sounds.

¶5　　The nurse testified she began the examination by asking the victim about her medical history and any sexual assault that had occurred. Obtaining an assault history, she explained, is "part of normal nursing care and it guides my treatment. It tells me what I'm going to do or not do." She further testified that, although part of her job as a forensic nurse is to collect evidence from the victim, "my job is to be a nurse first." She stated:

> I start out by explaining the process to my patient and getting consent from him or her in order to perform the exam. And the process is I obtain a history from my patient for the purpose of diagnosis and treatment. . . . And then I do a head to toe exam. And I do that looking for injury or trauma. And depending on what they told me in history, or detail, I do a genital exam looking for injury or trauma. And throughout the entire process I collect evidence using generally swabs off their bodies.

¶6　　Asked how she obtained an assault history from the victim, the nurse replied that she asked a "completely open-ended question. . . . I say tell me why you're here." In response to that question, the victim provided a graphic account of several assaults, which the nurse wrote down and read at trial:

3

[H]e held a gun to my head, shoved his hand into me, then he put his D in my mouth, his dick. The other guy tried to [p]ut his D in my buttocks, pulled my legs apart trying to put his D in me the other way. I sucked him off but he ha[d] sex with me, put his dick in my vagina. Then the other guy too had me suck him off; had sex with me in the bathtub. The third guy stuck his fingers in me to clean me out and then he made me suck him off.

¶7　　　　The nurse's examination of the victim took 75 minutes, after which she released the victim back to the care of the emergency room staff, recommending that she be given medication to prevent sexually transmitted infections and that she make an appointment to return for another check in a few weeks.

¶8　　　　The jury convicted Hill of one count of first-degree burglary, a Class 2 felony; four counts of kidnapping, Class 2 felonies; seven counts of sexual assault, Class 2 felonies; one count of attempted sexual assault, a Class 3 felony; and four counts of aggravated assault, Class 3 felonies. The court sentenced him to consecutive and concurrent sentences of imprisonment totaling 91.5 years.

¶9　　　　Hill timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes sections 12-120.21(A)(1) (2014), 13-4031 (2014) and -4033 (2014).[2]

## DISCUSSION

¶10　　　　Although several of Hill's convictions were supported by substantial other evidence at trial, the nurse's account of the victim's statement recited *supra* ¶ 6 was the only evidence establishing the particulars of a few of the charges against him. Hill argues the superior court violated his Sixth Amendment right to confront witnesses when it admitted the victim's statement to the forensic nurse.[3] We review the

---

[2]　　　Absent material revision after the date of the alleged offense, we cite a statute's current version.

[3]　　　Hill's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), saying she could identify no arguable question of law that was not frivolous. In a separate supplemental brief, Hill argued, *inter alia*, that the forensic nurse's

superior court's decision under the Confrontation Clause *de novo*. *State v. Tucker*, 215 Ariz. 298, 315, ¶ 61, 160 P.3d 177, 194 (2007).

**¶11**　　　　The Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that a "testimonial" statement by a witness who does not appear at trial must be excluded under the Confrontation Clause unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. The Court did not comprehensively define "testimonial," but described a "core class of 'testimonial' statements" as including affidavits, custodial examinations, depositions, prior testimony, confessions, "[s]tatements taken by police officers in the course of interrogations," and any other "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51-52.

**¶12**　　　　In *Davis v. Washington*, 547 U.S. 813, 817 (2006), the Supreme Court analyzed whether statements made to a 911 operator were "testimonial" for purposes of the Confrontation Clause. There the Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at 822. On the other hand, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. Thus, in *Davis* the Supreme Court shifted the focus under the Confrontation Clause to the "primary purpose" of an interrogation. *See State v. Alvarez*, 213 Ariz. 467, 471, ¶ 15, 143 P.3d 668, 672 (App. 2006). The Court observed that "a 911 call[] is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827; *see also id.* ("the elicited statements were necessary to be able to *resolve* the present emergency,

---

testimony violated his Confrontation Clause rights. Pursuant to *Penson v. Ohio*, 488 U.S. 75, 86-88 (1988), we ordered supplemental briefs addressing this issue. In a separate memorandum decision, we resolve other issues Hill raised in his supplemental brief, *see* Ariz. R. Crim. P. 31.26, and order the judgment of conviction modified to delete the requirement that Hill pay for DNA testing, *see State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013).

rather than simply to learn (as in *Crawford*) what had happened in the past").

**¶13**        In *Michigan v. Bryant*, the Court sought to clarify the "primary purpose" analysis.  562 U.S. __, 131 S. Ct. 1143, 1156 (2011).  The Court held the determination requires an objective evaluation of the facts relating to the exchange:

> An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the "primary purpose of the interrogation."  The circumstances in which an encounter occurs – *e.g.*, at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards – are clearly matters of objective fact.  The statements and actions of the parties must also be objectively evaluated.  That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

*Id*. at __, 131 S. Ct. at 1156.

**¶14**        Under these authorities, in determining whether the superior court here erred in allowing the nurse to recount the victim's statement, we must evaluate objectively all the facts concerning the exchange that produced the statement to determine the "primary purpose" of the nurse's question to the victim and the victim's response.  *See id.*; *see also State v. Mendez*, 242 P.3d 328, 339-40 (N.M. 2010).[4]

---

[4]        In considering whether a forensic nurse's testimony was admissible under the hearsay exception for statements made for medical diagnosis, the *Mendez* court commented, "[Forensic] nurses fill a void in our medical system, providing critical treatment to patients at a time of great physical, emotional, and psychological vulnerability . . . .  But they also have special expertise in gathering evidence for subsequent prosecution of the offender, which raises appropriate concerns about whether the statement was made for the purposes of seeking medical care or whether a medical provider could have reasonably relied upon the statement for diagnosis or treatment of the declarant."  242 P.3d at 339-40; *see Bryant*, 562 U.S. at __, 131 S. Ct. at 1155.

¶15        Other courts examining similar exchanges under the Confrontation Clause have looked to where the examination took place, the victim's medical condition, whether law enforcement officers were present and the formality of the exchange.

¶16        Courts routinely admit victims' statements made in response to questions necessary for medical treatment. *See, e.g.*, *People v. Vigil*, 127 P.3d 916 (Colo. 2006) (child victim's statements to physician at hospital helped physician discern what treatment child required; examination was not functional equivalent of police interrogation); *Commonwealth v. DeOliveira*, 849 N.E.2d 218, 224-25 (Mass. 2006) (child victim's statements to physician at hospital admissible because a reasonable declarant would have understood that question "what had happened" was a medical query). Accordingly, a victim's statement to a medical professional is more likely to be non-testimonial when the victim is examined in a hospital emergency room, where the medical necessity of the examination presumably is more pronounced. *See, e.g.*, *State v. Slater*, 939 A.2d 1105, 1119 (Conn. 2008) ("When such a victim is brought to a hospital, even by the police, we expect that his or her most pressing concern is getting medical attention and not providing a record of facts."); *State v. Harper*, 770 N.W.2d 316, 322-23 (Iowa 2009) (statements by burn victim to emergency room staff were to assist in diagnosis and emergency treatment); *State v. Vaught*, 682 N.W.2d 284, 286, 291-92 (Neb. 2004) (child victim's statement to emergency room physician was not testimonial).

¶17        When the testifying witness is a trained forensic medical professional, the issue may be more difficult. In *Hartsfield v. Commonwealth*, 277 S.W.3d 239, 241, 244-45 (Ky. 2009), the court held a rape victim's statements to a trained "sexual assault nurse examiner" ("SANE") at a hospital were testimonial because the nurse was an "active participant in the formal criminal investigation." The court found significant that the "nurse's questioning involved past events, was not related to an ongoing emergency, and took on the nature of a formal interview." *Id.* at 245. The court concluded that SANE nurses' "function of evidence gathering, combined with their close relationships with law enforcement, renders [their] interviews the functional equivalent of police questioning." *Id.* at 244.

¶18        Like the witness in *Hartsfield*, the forensic nurse in this case followed a law enforcement protocol by using a rape kit to gather evidence. But unlike in *Hartsfield*, where the nurse only interviewed the victim about her assault and collected biological samples, *see id.* at 241-42, 244-45, the forensic nurse in this case also provided medical care to the victim.

**¶19**    Because forensic medical examinations often have two purposes – to gather evidence for a criminal investigation and to provide medical care to the victim – whether a victim's statement in response to a question by the examiner is testimonial for purposes of the Confrontation Clause turns on whether the surrounding circumstances, objectively viewed, show that the primary purpose of the exchange at issue was to provide medical care or to gather evidence. *See Perry v. State*, 956 N.E.2d 41, 56-57 (Ind. App. 2011) (investigative component of forensic medical examination "was at best secondary to the principal objective of providing and receiving medical attention"); *State v. Miller*, 264 P.3d 461, 486-490 (Kan. 2011) (whether statements to a SANE nurse are testimonial is a "highly context-dependent inquiry" requiring analysis of the totality of the circumstances). For this reason, we part with *Hartsfield* and other cases, including *Medina v. State*, 143 P.3d 471 (Nev. 2006), to the extent they hold that rape victims' statements to forensic medical professionals are testimonial as a matter of law.

**¶20**    The *Hartsfield* court also found it significant that there was no "emergency" by the time the victim in that case was examined at the hospital. 277 S.W.3d at 245. A statement to police is more likely to be non-testimonial if it is made during an emergency, while the witness still may be in danger or criminal activity may remain afoot. *See Bryant*, 562 U.S. at __, 131 S. Ct. at 1166-67; *Davis*, 547 U.S. at 822. That does not mean, however, that a statement is testimonial unless it is made during an emergency. *See Bryant*, 562 U.S. at __, 131 S. Ct. at 1155 ("But there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony.").

**¶21**    The focus always must be on the purpose of the particular exchange between the declarant and the testifying witness in which the statement was made. *See Alvarez*, 213 Ariz. at 471, ¶ 15, 143 P.3d at 672. Under that analysis, when the objective circumstances indicate a statement was made in connection with the provision of emergency medical care, the statement is likely to be non-testimonial. *See, e.g., Ward v. State*, 15 N.E.3d 114, 117, 121 (Ind. App. 2014) (victim's statements in emergency room were made primarily for the provision of emergency medical care where victim had been severely beaten and there were concerns she suffered internal injuries to kidneys and lungs). In such a case, the emergent nature of the exchange makes it more likely that its purpose is medically related. *See id.* at 121.

¶22 We cannot say, however, that a statement made in response to a question by a medical provider in connection with non-emergent medical care necessarily is testimonial simply because the victim does not require *urgent* medical attention. *See Miller*, 264 P.3d at 489 ("[I]f statements are made in a medical emergency, there would be a strong indication the objective purpose was medical diagnosis and treatment. On the other hand, where there are injuries or concerns of injury, the lack of a medical emergency does not negate the purpose of seeking medical treatment."). If the primary purpose of the encounter is the provision and receipt of medical care, the statement is non-testimonial, regardless of whether the care sought is for an emergent condition. *See id.*; *see also United States v. DeLeon*, 678 F.3d 317, 323-26 (4th Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2850 (2013) (statements to social worker months before alleged criminal act were non-testimonial because they were made for treatment purposes, not for law enforcement purposes).[5]

¶23 Courts also have refused to admit statements made by a victim during a forensic medical examination when there is evidence of heightened police involvement – when, for example, an officer was present during the examination, or the examination was recorded for law enforcement purposes. *See, e.g.*, *United States v. Bordeaux*, 400 F.3d 548, 556 (8th Cir. 2005) (examination videotaped); *State v. Hooper*, 176 P.3d 911, 917-18 (Idaho 2007) (law enforcement officers present during the examination; videotape was made; and nurse did not ask any questions related to victim's medical condition); *State v. Bennington*, 264 P.3d 440, 455 (Kan. 2011) (law enforcement officer present and asked questions during examination); *State v. Snowden*, 867 A.2d 314, 325-27 (Md. 2005) (police officer present and social worker began the interview with a police report in hand); *Green v. State*, 22 A.3d 941, 951, 953 (Md. Spec. App. 2011) (forensic report was "prepared at the specific request of the police" and victim had "already received the needed medical assessment and treatment" at the hospital); *State v. Hurtado*, 294 P.3d 838, 845, ¶ 29 (Wash. App. 2013) (law

---

[5] Cases holding that statements are testimonial when made under circumstances that do not show the victim required or was seeking medical care are not inconsistent. *See Hernandez v. State*, 946 So. 2d 1270, 1280-86 (Fla. App. 2007) (child victim's statements to a "Child Protection Team" nurse one week after sexual attack were inadmissible); *State v. Cannon*, 254 S.W.3d 287, 305 (Tenn. 2008) (statement during structured examination and interview with forensic nurse after victim had received medical treatment was testimonial); *United States v. Gardinier*, 65 M.J. 60, 65-66 (C.A.A.F. 2007) (SANE nurse's account of interview of child victim conducted several days after child reported assault was testimonial).

enforcement officer present and gathered evidence during examination); *cf. State v. Stahl*, 855 N.E.2d 834, 837, ¶ 7, 846, ¶ 48 (Ohio 2006) (statements by victim were non-testimonial even though police officer was present).

¶24        Guided by these authorities, we conclude the nurse's recounting of the victim's statement did not violate Hill's rights under the Confrontation Clause.  The nurse's medical examination of the victim took place in the emergency room of a hospital, where the victim had been taken because she was in premature labor.  Significantly, the question that prompted the statement at issue – "Why are you here?" – is the starting point of any ordinary medical examination.  As the nurse testified:

> [I]f you go to a physician and you have a sore throat, you actually have to tell the physician or physician assistant or the nurse why you're there.  You don't just go in a room and sit and they have to wonder why you're there . . . .  It is the same thing with my patients, they come in and tell me why they are there, so that I can treat them.

Moreover, the nurse performed a standard medical assessment of the victim and recorded the results.  No law enforcement officer was present during any part of the examination, which was not recorded.  After examining the victim, the nurse recommended prophylactic preventative treatment for sexually transmitted infections and a follow-up appointment for medical care.  The victim remained in the emergency room for observation after the examination was completed.  These circumstances, objectively viewed together, demonstrate that the primary purpose of the exchange that produced the statement at issue was to provide medical treatment.

¶25        To be sure, the examination the nurse performed had an investigative component.  The nurse was specially trained to conduct forensic examinations of sexual assault victims.  She collected DNA samples to forward to law enforcement, and she recorded the results of her examination, including the victim's statement, on a form issued by the state. The statement recounted above, however, came at the outset of the victim's encounter with the nurse and before the nurse commenced her assessment of the injuries the victim had suffered and before she had collected any biological evidence of those injuries.  The open-ended question ("Tell me why you are here"), posed to the victim in the emergency room, was not aimed at collecting evidence but at gathering information about the victim's medical condition.  The objective circumstances of the exchange that produced the statement thus indicate that its primary purpose was medical

treatment, not the collection of evidence of a crime. *See Slater*, 939 A.2d at 1118 (collecting evidence during examination of a sexual assault victim "does not eviscerate the medical treatment purpose of the exam"); *Perry*, 956 N.E.2d at 56-57; *State v. Bobadilla*, 709 N.W.2d 243, 255 (Minn. 2006).

## CONCLUSION

**¶26**         Because the victim's statement to the forensic nurse was not testimonial, Hill's rights under the Confrontation Clause were not violated when the superior court allowed the nurse to recount the statement. For the reasons set forth above and in our accompanying memorandum decision, we affirm Hill's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh