NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSE EMMANUEL LOPEZ ZAMORA, *Appellant*.

No. 1 CA-CR 17-0065
FILED 2-27-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-157563-001 DT
The Honorable Jose S. Padilla, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**        Jose Emmanuel Lopez Zamora ("Zamora") appeals his convictions and dispositions for aggravated assault and assault. He argues the trial court improperly admitted hearsay testimony in violation of his confrontation rights. Zamora also contends the court's restitution order should be vacated. For the following reasons, we vacate the restitution order, but affirm in all other respects.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**        Zamora initiated sexual relations with his wife (the "Victim"), but she rebuffed his advances. Zamora then physically forced the Victim to have sexual intercourse with him. A neighbor overheard the commotion and called police, who subsequently transported the Victim to the Family Advocacy Center for a physical examination by a forensic nurse. Because of the Victim's limited English proficiency, the nurse utilized interpreters to communicate with the Victim in her native language, Spanish.[2]

**¶3**        The Victim did not testify at trial, but, over Zamora's objections on hearsay and 6th Amendment grounds, the nurse testified about the results of the Victim's examination and statements the Victim made regarding the assault. The jury found Zamora guilty of aggravated assault and assault, domestic violence offenses. The court imposed concurrent three-year terms of probation, and Zamora timely appealed. We

---

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Zamora. *See State v. Harm*, 236 Ariz. 402, 404 n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[2]        At some point during the Victim's physical examination a second interpreter replaced the first one.

have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A)(1) (2010).

## ANALYSIS

### I. *Hearsay; Confrontation Rights*

**¶4** Zamora makes two arguments challenging the admissibility of the nurse's testimony. He first argues the nurse's testimony regarding the Victim's statements constituted hearsay and violated his 6th Amendment right to confront and cross-examine the Victim. Similarly, Zamora contends the nurse's testimony about the interpretations of the Victim's statements amounted to hearsay and violated his right to confront the interpreters. We reject both arguments.

**¶5** We affirm a trial court's admission of evidence over a party's hearsay objection unless the court has abused its discretion. *State v. Chavez*, 225 Ariz. 442, 443, ¶ 5 (App. 2010). We, however, review *de novo* challenges to the admissibility of evidence based on the Confrontation Clause. *State v. Bronson*, 204 Ariz. 321, 324, ¶ 14 (App. 2003).

**¶6** The Arizona Rules of Evidence generally prohibit a court from admitting into evidence a declarant's out-of-court statement if offered "to prove the truth of the matter asserted" as hearsay. Ariz. R. Evid. 801(c). Statements, however, which are made for or related to a medical diagnosis or treatment and which describe the medical history, the symptoms, or the cause of the injury may be admissible as an exception to the general rule against hearsay. Ariz. R. Evid. 803(4). To determine whether statements fall into this exception courts must determine whether the declarant's motive was, at least in part, to receive medical treatment and whether it was reasonable to rely on the declarant's statements for diagnosis or treatment. *State v. Robinson*, 153 Ariz. 191, 199 (1987) (quoting *State v. Jeffers*, 135 Ariz. 404, 420-21 (1983)). *See also State v. Rushton*, 172 Ariz. 454, 457 (App. 1992) (finding a declarant does not need to make her statements to a physician for them to be admissible under the medical treatment exception to the rule against hearsay).

**¶7** Additionally, the Confrontation Clause prohibits the admission of out-of-court testimonial evidence unless the defendant has cross-examined the declarant. *State v. Parker*, 231 Ariz. 391, 402, ¶ 38 (2013) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Although the United States Supreme Court did not specifically define what constitutes "testimonial evidence," it did provide that such evidence includes "*ex parte* in-court testimony or its functional equivalent—that is, material such as

affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at 402-03 (quoting *Crawford*, 541 U.S. at 51). *See also State v. King*, 212 Ariz. 372, 376, ¶ 20 (App. 2006) (broadening the category of testimonial evidence to include any statement that a declarant reasonably expects to be used at trial (citation omitted)).

¶8        Here, the Victim's statements to the forensic nurse were consistent with her desire to obtain medical treatment for the physical assault committed against her. And the nurse reasonably relied on the information the Victim relayed to determine what, if any, treatment was medically indicated. As the nurse explained, the Victim's comments during the examination were important for the nurse to triage the Victim's injuries and recommend the Victim seek emergency care. Thus, the medical treatment exception applied to render admissible the Victim's hearsay statements she made to the nurse.

¶9        Further, the nurse's testimony regarding the Victim's statements did not implicate Zamora's confrontation rights. The Victim's statements were non-testimonial because she made them primarily to obtain medical care. *See State v. Hill*, 236 Ariz. 162, 167-68, ¶ 22 (App. 2014) ("If the primary purpose of the encounter is the provision and receipt of medical care, the statement is non-testimonial, regardless of whether the care sought is for an emergent condition."). As the nurse testified at a preliminary hearing:

> Q. And when you conduct these examinations . . . what's your primary purpose? Are you trying to gather evidence?
>
> A. The primary purpose of the exam is to provide a medical examination and evaluation of the patient. A secondary purpose is for the collection of evidence. So the first components are present in that exam, but the medical needs of my patient always take precedence over anything that I would select for evidentiary value.
>
> Q. So is it fair to say you're a medical professional conducting a medical examination of a patient?
>
> A. Yes, that's correct.
>
> . . .

4

Q. [Y]ou referred to your purpose as two-fold; correct, you said your primary purpose was medical examination and evaluation, and secondary purpose was collection of evidence; correct?

A. Yes, that's correct.

Q. I was taken aback by your choice of words, because you make it sound as if one is more important than the other. Would you agree that they are both equally important to your job as a forensic nurse?

A. I would say that they are both components of a medical forensic examination, but I would never compromise the health of my patient in order to obtain something for evidence.

¶10　　　　Additionally, the nurse initiated the examination by assessing the Victim's general health and then asking, "[c]an you tell me about what happened to bring you here?" No law enforcement officer was present during the examination, and after the examination, the nurse prescribed medication to the Victim for on-going treatment and recommended the Victim visit an emergency room to address potential injuries. *See id.* at 168-69, ¶ 24 (concluding similar circumstances, "objectively viewed together, demonstrate that the primary purpose of the exchange that produced the statement at issue was to provide medical treatment").[3] Thus, the trial court did not err in permitting the nurse to

---

[3]　　　　Zamora argues *Hill* is distinguishable because (1) the examination in this case did not take place at an emergency room; (2) there was no apparent emergency; (3) the nurse initiated the interview by asking for a history of the assault; and (4) the Victim was not kept for observation. As noted, however, *Hill* expressly declined to hold that treatment for an emergent condition was required to find the primary purpose of a physical examination is medical treatment and not a criminal investigation. *Id.* at 167-68, ¶ 22. Moreover, as also noted, the nurse testified that she advised the Victim to seek emergency care, and she testified that she commenced the examination by asking the Victim about her general medical history followed by "open-ended questions to obtain the narrative history of what occurred." Alternatively, Zamora invites us to find *Hill* was wrongly decided. We decline to do so. Finally, Zamora argues that the nurse failed

testify about the Victim's statements made during the physical examination.

¶11 Contrary to Zamora's argument, the court also did not err in concluding the Victim's interpreted statements were reliable and therefore admissible.[4] The record establishes that the interpreters, employed by LanguageLine Solutions ("LanguageLine"), passed an oral language skills proficiency test, received advanced training in medical interpretation, and were periodically monitored to assure the quality of their interpretations. Further, the court took judicial notice that "virtually every court" uses LanguageLine's "certified interpreters" to provide interpretation services. Most importantly, the Victim answered the nurse's questions responsively, and the Victim's statements were consistent with the nurse's physical findings, thus indicating the interpretation was accurate and reliable.

##### II. *Restitution Order*

¶12 At sentencing, the court ordered Zamora to pay $550 for the forensic nurse examination fee. Zamora contends the order amounted to an abuse of discretion. Zamora, however, failed to object to the restitution order in the trial court; accordingly, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). An order of restitution is a sentence, *State v. Hawkins*, 134 Ariz. 403, 406 (App. 1982), and generally, an illegal sentence constitutes fundamental error. *State v. Soria*, 217 Ariz. 101, 102, ¶ 4 (App. 2007) (citation omitted).

¶13 Crime victims in Arizona are entitled "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. II, § 2.1(A)(8). A

---

to obtain the Victim's consent to perform the examination. The nurse's testimony, however, is to the contrary.

[4] Zamora argues his inability to cross-examine the interpreters violated his confrontation rights. Zamora bases this argument, however, on his assertion that the nurse's testimony regarding the Victim's statements during the physical examination were inadmissible hearsay because the primary purpose of the exam was to collect evidence. Zamora also relies on *State v. Terrazas*, 162 Ariz. 357 (App. 1989), for the proposition that cross-examination of the interpreters was necessary to determine their reliability. We have already concluded the nurse's examination was primarily to provide medical treatment and the interpretations were reliable. Thus, we need not further address this argument.

defendant who has been convicted of a crime shall be ordered "to make restitution to the person who is the victim of the crime . . . in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). "Restitution is recoverable for a loss which (1) is economic; (2) would not have occurred but for the criminal conduct; and (3) is directly caused by the criminal conduct." *State v. Linares*, 241 Ariz. 416, 418, ¶ 7 (App. 2017) (citation omitted). Further, an award of restitution must bear a reasonable relationship to the victim's loss. *State v. Madrid*, 207 Ariz. 296, 298, ¶ 5 (App. 2004). The State must prove the amount of restitution by a preponderance of the evidence. *In re Stephanie B.*, 204 Ariz. 466, 470, ¶ 15 (App. 2003).

**¶14**      Here, nothing in the record indicates what relationship, if any, the $550 ordered as restitution has to the Victim's economic loss, and it is not clear who is entitled to restitution. *See, e.g.*, *Linares*, 241 Ariz. at 418, ¶ 3 (noting the Maricopa County Attorney's Office contracts with the Phoenix Children's Hospital to conduct forensic evaluations of children suspected of being subjected to physical abuse and pays the Advocacy Center "a standard fee of $550 for use in criminal prosecutions"). Indeed, in her presentence investigation, the probation officer noted "[r]estitution has not been established in the present offense." On this record, we cannot affirm an award of restitution. Accordingly, the trial court fundamentally erred, and we vacate the restitution order of $550.

**CONCLUSION**

**¶15**      Zamora's convictions and dispositions are affirmed. The restitution order is vacated.



AMY M. WOOD • Clerk of the Court
FILED: AA