NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY ALBERT SALAZAR, *Appellant.*

No. 1 CA-CR 20-0097
FILED 7-8-2021

Appeal from the Superior Court in Maricopa County
No.  CR2016-149931-001
The Honorable Warren J. Granville, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S,** Judge:

¶1     Anthony Albert Salazar appeals his convictions and sentences for kidnapping, aggravated assault, and violent sexual assault. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In May 2012, two men wielding knives pulled A.F. and N.C. (collectively "victims") into a vehicle. One of the men sexually assaulted A.F. in the back seat, while the other sexually assaulted N.C. in the front seat. The victims eventually broke away from the men and ran home.

¶3     A.F. contacted police the next day. The responding officer interviewed the victims and took them to an advocacy center shared by law enforcement and forensic medical staff. Forensic nurses examined the victims, checked for injuries, and collected swabs for DNA testing. A.F. sustained an injury on her neck and complained of genital and pelvic pain. N.C. sustained injuries on her anus, abdomen, thigh, and ankle.

¶4     In March 2013, forensic analysts tested swabs collected from the victims. The analysts located spermatozoa with a full DNA profile on A.F.'s external genital swab.

¶5     In 2015, technical advances in the federal DNA database enabled analysts to match the DNA profile with Salazar. A cold case detective learned of the DNA match and began investigating. The detective spoke with the victims, but N.C. could not remember details of the assault. The detective noted that Salazar's appearance fit A.F.'s description of her perpetrator. Further investigation revealed Salazar's criminal history, including prior convictions for sexual assault. And additional testing confirmed Salazar's DNA profile matched the profile located on A.F.'s external genital swab.

¶6     A grand jury indicted Salazar for one count of kidnapping, one count of aggravated assault, and three counts of violent sexual assault

2

related to A.F. The grand jury also indicted Salazar for two counts of aggravated assault, one count of kidnapping, and one count of violent sexual assault related to N.C. As to the unidentified man's conduct, the grand jury indicted Salazar as an accomplice to one aggravated assault count and one violent sexual assault count.

¶7         At trial, A.F. testified that a man pointed a knife at her, forced her into the backseat of a vehicle, and penetrated her vagina with his penis and fingers. She contacted police officers, traveled to the advocacy center, and provided truthful statements to the responding officer and nurse. A.F. did not remember any other sexual acts or the involvement of a second perpetrator.

¶8         N.C. testified that one of the two men pulled her into the front seat of a vehicle, penetrated her vagina with his fingers, and touched her anus. N.C. described her perpetrator as a Hispanic male and she vaguely remembered him holding a knife, but she could not remember details of what happened to A.F. or how they escaped.

¶9         Salazar cross-examined the victims, emphasizing forgotten details and any inconsistencies between their testimony and pretrial statements. Salazar also cross-examined the victims about their mental illnesses, including prior diagnoses, medications, and auditory hallucinations.

¶10         The nurses testified their primary role is to examine victims for injuries, complete a physical and neurological assessment, determine whether a higher level of care is needed, and provide medication or treatment. The nurses' secondary role is collecting swabs for DNA testing. Examinations are conducted in rooms outside the presence of law enforcement.

¶11         The nurses testified they examined the victims using all standard protocols and offered them venereal disease treatment, pregnancy testing, and pregnancy prophylaxis. The nurses gathered the victims' statements about the assault and provided those statements to the jury. The victims gave a more detailed account of the assault to the nurses, including A.F.'s report of oral sexual contact. The superior court permitted this testimony over Salazar's objection. But the court instructed the jury that it admitted the pretrial statements for the limited purpose of explaining the medical examinations.

¶12         After the victims testified, the State called the responding officer to provide details from his initial interview. The officer testified

about the victims' description of the assault, noting that A.F. never mentioned oral sexual contact and N.C. never mentioned touching of the anus. Salazar failed to object to this testimony.

**¶13**     The superior court acquitted Salazar on one count of aggravated assault and the kidnapping count, and the jury found Salazar not guilty of two counts of violent sexual assault. The jury found Salazar guilty of all remaining counts.

**¶14**     The superior court found Salazar had at least three prior felony convictions. The court sentenced Salazar to various terms of imprisonment, including two consecutive terms of natural life in prison. Salazar timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033(A).

## DISCUSSION

**¶15**     Salazar raises three issues on appeal. He argues: (1) the victims' memory loss prevented him from effective cross-examination guaranteed by the Confrontation Clause; (2) the admission of the victims' pretrial statements to the responding officer violated the Confrontation Clause; and (3) the admission of the victims' pretrial statements to the responding officer violated the Confrontation Clause.

### I.     Victims' Memory Loss

**¶16**     Salazar first argues the victims' memory loss prevented him from effective cross-examination. We review claims of Confrontation Clause violations *de novo*. *State v. Shivers*, 230 Ariz. 91, 92, ¶ 6 (App. 2012).

**¶17**     The Confrontation Clause guarantees a defendant the right to confront witnesses against him. *See* U.S. Const. amend. VI; *see also* Ariz. Const. art. 2, § 24. But that right does not guarantee a perfect witness, free of forgetfulness or confusion. *See State v. Salazar*, 216 Ariz. 316, 318, ¶ 9 (App. 2007). "[R]ather, it affords the defense a full and fair opportunity to probe and expose these infirmities through cross-examination." *Id.* (internal quotations omitted) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 21–22 (1985)). Memory loss therefore does not render a testifying witness unavailable for purposes of the Confrontation Clause. *See id.* at 318–19, ¶¶ 9–10 (victim did not remember details of the offense); *see also State v. Real*, 214 Ariz. 232, 234–36, ¶¶ 5–13 (App. 2007) (officer did not remember the investigation). We will find no violation when a defendant had the opportunity to present the jury with "information which bears either on the issues in the case or on the credibility of the witness." *State v. Lehr*, 201 Ariz.

509, 518, ¶ 30 (2002) (internal quotations omitted) (quoting *State v. Fleming*, 117 Ariz. 122, 125 (1977)).

**¶18**   Salazar questioned the victims about their memory loss, inconsistencies in their testimony, and mental health diagnoses and medications potentially impacting their cognitive abilities. The victims had issues remembering details of the offenses, but Salazar had the opportunity to undermine their version of events and attack their credibility. *See Fensterer*, 474 U.S. at 20 (testimony need not conform "in whatever way, and to whatever extent" the defense wishes). Because Salazar received the opportunity to cross-examine the victims without restriction, the protections of the Confrontation Clause were neither implicated, nor violated.

**II.**   **Victims' Pretrial Statements to Nurses**

**¶19**   Salazar next argues the admission of the victims' pretrial statements to the nurses violated the Confrontation Clause. We review challenges to the admissibility of evidence based on the Confrontation Clause *de novo*. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

**¶20**   The Confrontation Clause is not implicated by the admission of nontestimonial pretrial statements. *See State v. Tucker*, 215 Ariz. 298, 315, ¶ 61 (2007). A victim's pretrial statements to a nurse may be considered nontestimonial if made for the primary purpose of obtaining medical care. *See State v. Hill*, 236 Ariz. 162, 167–68, ¶ 22 (App. 2014); *see also* Ariz. R. Evid. 803(4). We consider "whether the surrounding circumstances, objectively viewed, show that the primary purpose of the exchange at issue was to provide medical care or gather evidence." *Hill*, 236 Ariz. at 167, ¶ 19. Medical examinations with an investigative component do not automatically render a victim's statements testimonial. *Id*. at 168-69, ¶¶ 25–26.

**¶21**   The nurses examined the victims, assessed their injuries, performed testing and treatment, and asked about their medical history. The nurses and law enforcement share the advocacy center, but the nurses collected DNA swabs for testing and performed the examinations outside of any monitoring or recording by law enforcement. The nurses asked the victims for their assault histories, noted their statements on a standard form, and provided medical care accordingly. Based on this record, the primary purpose of the exchange at issue was to provide medical care. *See id.* at 167, ¶ 19. Again, the protections of the Confrontation Clause were neither implicated, nor violated.

**III.          Victims' Pretrial Statements to Responding Officer**

**¶22**          Finally, Salazar argues the admission of the victims' pretrial statements to the responding officer violated the Confrontation Clause. Because Salazar did not object to the admission of the statements at trial, we review only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶23**          The Confrontation Clause prohibits the use of testimonial pretrial statements unless the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). The Confrontation Clause is not violated when the declarant "testified at trial and was subjected to unrestricted cross-examination," even if the declarant struggles to remember details of the offenses. *State v. King*, 180 Ariz. 268, 276 (1994); *see also U.S. v. Owens*, 484 U.S. 554, 557–60 (1988) (pretrial identification of defendant is admissible despite victim's issues remembering the offense).

**¶24**          The victims testified at trial and Salazar subjected them to unrestricted cross-examination. The State then called the responding officer to provide the victims' statements from the initial interview. Salazar's opportunity to cross-examine the victims before the admission of their pretrial statements satisfies the requirements of the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9. The court did not err by admitting pretrial statements made to the responding officer.

**CONCLUSION**

**¶25**          We affirm.

