NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT ALLEN LEE, *Appellant.*

No. 1 CA-CR 24-0687

FILED 05-22-2026

Appeal from the Superior Court in Maricopa County
No. CR2024-006141-001
The Honorable Pamela Hearn Dunne, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun
*Counsel for Appellee*

Bain & Lauritano PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

**¶1**        Robert Allen Lee appeals from his convictions and sentences. Lee contends the superior court violated the Sixth Amendment by admitting pretrial statements through testimony at trial and erred in failing to sever several of his charges. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        "We view the evidence in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against the defendant." *State v. Fierro*, 254 Ariz. 35, 38 ¶ 2 (2022).

**¶3**        Lee was married to his wife in 2017 and lived with her and her stepdaughter Amanda[1] until 2021. When Amanda was nine years old, Lee began sexually assaulting her. The abuse continued until Amanda was fifteen years old.

**¶4**        Amanda and Gabby[2] were friends and Lee provided the two girls with marijuana for their personal use. In October 2021, Gabby was visiting Amanda at her house when Lee sexually assaulted Gabby. Gabby shared the details of her assault with another friend, whose mother then reported the assault to the Peoria Police Department. An officer responded and recommended Gabby participate in a forensic nurse examination ("FNE") at the Glendale Advocacy Center, which Gabby agreed to do. At the advocacy center, a forensic nurse asked Gabby about the assault, performed an FNE, and prescribed oral antibiotics. During her exam, Gabby explained the events of the assault to the nurse.

**¶5**        Lee was arrested in December 2021. The following month, while Lee was incarcerated, Gabby contacted Lee for a "confrontation call" to elicit an admission of the events of her assault.

---

[1]        We use the pseudonym "Amanda" to protect the victim's privacy. *See* Ariz. R. Sup. Ct. 111(i).
[2]        We use "Gabby" as a pseudonym to protect the friend's privacy. *Id.*

¶6         Lee was later charged in a sixteen-count indictment. Counts 1 through 7 charged Lee with sexual conduct relating to his stepdaughter Amanda. Count 8 charged Lee with transferring marijuana to Amanda and Count 9 charged him with transferring marijuana to Gabby. Counts 10 and 11 charged Lee with sexual conduct relating to Gabby. Lastly, Counts 12 through 16 charged Lee with various instances of witness tampering involving Amanda or her mother, thereby affecting proceedings on the first seven counts. All sixteen counts were charged and tried together in the same proceeding. Lee did not move to sever any of the counts.

¶7         Before trial, the State disclosed its intent to use the statements Gabby made to the forensic nurse at the advocacy center. The court held an evidentiary hearing on the matter, during which Lee objected on hearsay and Confrontation Clause grounds. The court held that the State was permitted to introduce Gabby's statements through the nurse's testimony because although the statements were hearsay, they were admissible under the "medical diagnosis or treatment" exception. *See* Ariz. R. Evid. 803(4). And because the statements were admitted as medical diagnosis or treatment, they were not testimonial, so their admission did not violate the Confrontation Clause.[3]

¶8         At trial, Lee did not renew his objection to admission of Gabby's statements to the nurse. Thus, the nurse related those statements verbatim in her own testimony. Gabby did not testify.

¶9         The State also moved to admit Gabby's confrontation call with Lee and argued Gabby's statements made during the call were not hearsay because they were not being offered for the truth of the matter asserted. Lee objected to admission of the call under the Confrontation Clause. The court found Gabby's confrontation call statements admissible and that admitting them did not violate the Confrontation Clause. However, the court proposed giving a limiting instruction to clarify that what Gabby said was not being offered for the truth of the matter asserted. The State agreed to this instruction and Lee did not object. The court then gave this limiting instruction twice.

¶10        Lee was found guilty on all sixteen counts and sentenced to various consecutive and concurrent sentences, the greatest of which included three life sentences. Lee timely appealed. We have jurisdiction

---

[3]        The court excluded a portion of Gabby's statement related to how Lee was "much bigger than me" and the nurse did not testify as to this portion of her statement during trial.

under Article 6, Section 9 of the Arizona Constitution and A.R.S. Sections 13-4031 and -4033(A).

## DISCUSSION

¶11 Lee raises two issues: (1) the admission of Gabby's pretrial statements through the nurse's testimony and Gabby's statements made during the confrontation call violated the Confrontation Clause; and (2) the trial court denied him a fair trial by failing to sever the charges related to Gabby from all other charges, where the physical evidence and witnesses differed and the charges were unrelated. We address each argument in turn.

**I.     The Superior Court Did Not Violate Lee's Rights Under the Confrontation Clause in Admitting Gabby's Pretrial Statements During the Forensic Examination and Confrontation Call.**

¶12 Lee argues admitting Gabby's pretrial statements violated his Sixth Amendment right to confrontation. "We review evidentiary rulings that implicate the Confrontation Clause de novo." *State v. Bocharski*, 218 Ariz. 476, 485–86 ¶ 33 (2008). Upon finding a violation of the Confrontation Clause, such violations are subject to a harmless error analysis, *id.* at 486 ¶ 38, when the defendant objected to the violation at trial, *State v. Henderson*, 210 Ariz. 561, 564 ¶ 8 (2005). Because Lee objected at trial, we review his constitutional argument for harmless error.

¶13 The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *see also* Ariz. Const. art. 2, § 24 (granting defendant the right "to meet the witnesses against him face to face"). Further, the Confrontation Clause bars the admission of out-of-court testimonial evidence unless the defendant has a chance to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). However, the Confrontation Clause only applies to statements that are both hearsay and testimonial. *Smith v. Arizona*, 602 U.S. 779, 800 (2024). It does not exclude non-testimonial evidence. *Crawford*, 541 U.S. at 68.

¶14 Here, Lee presents two challenges to the admissions of evidence, and we address each in turn.

**A.** **Gabby's Pretrial Statements to the Nurse During Her Examination Are Non-Testimonial, and Thus Do Not Implicate, or Violate, the Confrontation Clause.**

¶15 Under the Confrontation Clause, Lee challenges the admission of Gabby's pretrial statements describing her assault, which were made during her forensic medical examination and offered through the testimony of the nurse who performed the examination. A victim's pretrial statements may be considered nontestimonial if made for the primary purpose of obtaining medical care. *See State v. Hill*, 236 Ariz. 162, 167–68 ¶ 22 (App. 2014); *see also* Ariz. R. Evid. 803(4).

¶16 A forensic medical examination often has two purposes: "to gather evidence for a criminal investigation and to provide medical care to the victim[.]" *Hill*, 236 Ariz. at 167 ¶ 19. Therefore, whether a victim's statements in response to a question by an examiner are testimonial under the Confrontation Clause "turns on whether the surrounding circumstances, objectively viewed, show that the primary purpose of the exchange at issue was to provide medical care or to gather evidence." *Id.* The focus lies in the purpose of the *particular exchange* between the declarant and the testifying witness during which the statement was made. *See State v. Alvarez*, 213 Ariz. 467, 471 ¶ 15 (App. 2006). When the primary purpose of the encounter is to provide and receive medical care, the statement is non-testimonial. *Hill*, 236 Ariz. at 167–68 ¶ 22.

¶17 Here, Lee challenges statements Gabby made describing the assault in response to the nurse's question "What happened?" But the surrounding conversation is determinative. At this point in her examination, the nurse had asked Gabby about her medical history, allergies, and current medications to inform Gabby's treatment plan. The context in which the nurse asked Gabby "What happened?" reveals that it was the starting point of a medical examination, which the nurse testified she asked to "guide my exam."

¶18 Moreover, following Gabby's answer, the nurse performed a standard medical assessment, including taking her vital signs, and recorded the results. After the examination, the nurse prescribed Gabby an oral antibiotic for chlamydia and recommended a shot to protect against gonorrhea but opted not to prescribe "plan B" or "medication for trichomonas" based on the specifics attendant to Gabby's account of the assault.

¶19      The examination the nurse performed did have an investigative component. During the examination, the nurse took photographs and collected various DNA swabs to forward to law enforcement. However, the statements at issue here were made at the outset of her encounter with the nurse and commenced with the nurse's assessment of the injuries Gabby had suffered. This context suggests the nurse's open-ended question of "What happened?" was not aimed at collecting evidence, but rather at gathering information about Gabby's assault and subsequent medical condition to inform the nurse's treatment plan for Gabby.

¶20      Lee also argues that the facts of this case are similar to the facts in *State v. Johnson*, ___ Ariz. ___, ___, 2026 WL 820411 (App. 2026). In *Johnson*, the victim of a strangulation received medical care at a hospital and following this, the police took the victim to an advocacy center located in a police station to receive a forensic examination. *Id.* at *6 ¶¶ 35, 39. While receiving a forensic examination, the victim made statements related to the strangulation to the nurse performing her exam. *Id.* at *2 ¶ 14. The nurse later testified at trial as to these statements, while the victim herself did not testify. *Id.* We held in *Johnson* that admission of the victim's statements to the forensic examiner violated the Confrontation Clause because "the victim made the statements for the primary purpose of creating an out-of-court substitute for trial testimony." *Id.* at *7 ¶ 44.

¶21      However, *Johnson* presents two key differences from the facts of this case. First, in *Johnson*, the victim had previously gone to the hospital to seek out medical care, had been attended by a doctor, and was discharged with no need to receive any further medical treatment. *Id.* at *3 ¶ 15, *7 ¶ 41. Here, by contrast, the forensic examination was the first time Gabby sought or received medical treatment. Second, the victim in *Johnson* did not receive any medical treatment, or recommendations for treatment, during the forensic examination because the victim had already been treated at the hospital. *Id.* at *7 ¶ 41. Unlike in *Johnson*, the nurse here developed a treatment plan for Gabby that was informed specifically by Gabby's relation of the events. And the nurse, in fact, provided medical treatment to Gabby by recommending and administering certain prophylactic antibiotics, while eschewing other treatments that were unnecessary because of the specific facts of the assault. Given these significant differences in case facts, our decision in *Johnson* is distinguishable.

¶22      As a result, the objective circumstances of the exchange at issue indicate that the primary purpose of Gabby's recounting of the assault

was medical treatment, not collecting of evidence of a crime, making it non-testimonial. *Id.* Therefore, admitting this statement does not implicate, and necessarily does not violate, the Confrontation Clause.

**B.      The Superior Court Did Not Err by Admitting Gabby's Statements During the Confrontation Call.**

**¶23**      Lee further claims the court erred by admitting Gabby's statements made during the confrontation call because the statements were testimonial hearsay. As a detective explained during trial, a confrontation call is an "investigative tool" where "[t]he victim talks to the suspect, talks about the allegation, the incident, what happened and . . . see[s] where that conversation goes."

**¶24**      The Confrontation Clause generally prohibits the introduction of testimonial hearsay of a non-testifying declarant. *Smith*, 602 U.S. at 784. Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and is offered into evidence "to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). Generally, hearsay is inadmissible unless an exception applies. *See* Ariz. R. Evid. 802.

**¶25**      However, "[s]tatements offered for a purpose other than proving the truth of the matter asserted are not hearsay." *State v. Allen*, 253 Ariz. 306, 327 ¶ 27 (2022) (citation modified). Specifically, "the court may admit out-of-court statements offered to prove the effect on the listener or to provide context for a defendant's responses." *State v. Fordson*, 258 Ariz. 167, 173 ¶ 27 (App. 2024) (citing *State v. Forde*, 233 Ariz. 543, 563–64 ¶¶ 73, 78 (2014) ("A text message stating, 'cops on scene, lay low' was not hearsay because the message was offered not to show the cops were on scene, but that the declarant was communicating concerns about police activity to someone he thought would share his concerns, suggesting the person's involvement.")).

**¶26**      In *Allen*, the defendant challenged two different pieces of evidence as violative of the Confrontation Clause. 253 Ariz. at 327–30 ¶¶ 25–37. The first piece of evidence was the defendant's husband's statements from a taped conversation in the interview room. *Id.* at 327 ¶ 26. Our supreme court held that these statements were not admitted in violation of the Confrontation Clause because the husband's statements were not introduced for hearsay purposes, but instead to provide context. *Id.* at 328 ¶ 29.

¶27        As in *Allen*, here, Gabby's statements from this confrontation call were not admitted to prove the truth of the matter asserted. Rather, the court admitted Gabby's statements as context to show that Lee's reactions were incongruent with his claims of innocence, just as the State highlighted the wife's reactions to her husband's statements in *Allen*. *Id.* at 329 ¶ 30. Specifically, during the call, Gabby made a number of extremely explicit remarks concerning the nature of Lee's sexual behavior and technique and her pleasure at Lee's performance of a particular sex act, and the State argued that Lee's subdued and atypical reactions did not resemble how one would expect an innocent person to respond to such allegations. In its closing argument, the State argued, "If your 16-year-old neighbor was having the conversation with you that she was having with him and it didn't happen, you're going to react and respond in a much bigger way, no matter how distracted you are."

¶28        Further, in *Allen*, the defendant asserted that the admission of the detective's final interrogation constituted fundamental error because the detective's "statements and questions contained inadmissible hearsay in violation of the Confrontation Clause . . . ." *Id.* at 329 ¶ 34. The detective used "statements made by non-testifying witnesses, each implicating [wife] in [her daughter's] death, to elicit a response or confession during the videotaped interview." *Id.* at 330 ¶ 36. But statements used as part of a "valid interrogation technique" are admissible when not admitted for their truth. *Id.* at 330 ¶ 35. In admitting recordings of the detective's statements, the Confrontation Clause was not violated "when the statements [were] used merely as a method of interrogation and the jury understands they are not intended to prove the truth of the matters asserted." *Id.* at 329–30 ¶ 35 (citation modified).

¶29        As in *Allen*, it was clear that Gabby's statements from this confrontation call were merely a permissible interrogation method. While testifying, the detective described a confrontation call as "an investigative tool" where "[t]he victim talks to the suspect, talks about the allegation, the incident, what happened" with the goal of eliciting "response[s] from the defendant." Therefore, like the detective in *Allen*, the State introduced Gabby's statements as part of an interrogation technique, not to prove the truth of what she said during the call, and the court did not err in admitting the recording of the confrontation call.

¶30        Admission of Gabby's statements did not violate the Confrontation Clause because they were used (1) for the non-hearsay purpose of providing context to, and highlighting, Lee's reactions to her statements; and (2) as a valid interrogation method that the jury understood

was not intended to prove the truth of the matters asserted. Neither of these uses depended upon the truth of what Gabby said in the confrontation call. Therefore, the statements were neither hearsay nor even testimonial in nature and cannot support Lee's Confrontation Clause challenge. *Fordson*, 258 Ariz. at 174 ¶ 30.

**¶31** And even assuming, arguendo, that the court erred in admitting Gabby's confrontation call statements, the court twice provided a limiting instruction to the jury to consider Gabby's statements not for their truth, but for the context they provided to Lee's statements and reactions on the call. "We presume that jurors follow the court's instructions." *State v. Pandeli*, 242 Ariz. 175, 189 ¶ 58 (2017). Thus, any potential error was rendered harmless beyond a reasonable doubt by the court's limiting instruction to the jury. *See State v. Carlson*, 237 Ariz. 381, 397 ¶ 61 (2015) (holding that where a statement made in error was immediately preceded by the court's instruction it was assumed that the jurors followed the instructions and therefore any error was harmless).

**¶32** The court did not violate Lee's Confrontation Clause rights by admitting Gabby's confrontation call statements.

## II. The Superior Court Did Not Fundamentally Err in Failing to *Sua Sponte* Sever Counts 9, 10, and 11 From Lee's Remaining Counts.

**¶33** Lee claims the court should have severed Counts 9, 10, and 11—those related to Gabby's assault—from all other counts. He argues the court's failure to sever these counts was fundamental error because they allegedly cross-contaminated the jury's deliberation of the other counts, thereby depriving Lee "of the opportunity for the jury to render verdicts free of the taint of highly emotionally charged evidence of sexual abuse of other minors and acts to tamper with witnesses." Without the jury's impermissible consideration of evidence related to other charges, he argues, a reasonable jury would have reached a different verdict, and therefore, the jury's determination of his guilt was unfair.

**¶34** Lee did not move at any time to sever the charges. Accordingly, we review for fundamental error only. *State v. Escalante,* 245 Ariz. 135, 138 ¶ 1 (2018) ("When a defendant fails to object to trial error, he forfeits appellate relief absent a showing of fundamental error."); *accord* Ariz. R. Evid. 103(e).

**¶35** Two or more offenses may be joined in an indictment if they: "(1) are of the same or similar character; (2) are based on the same conduct or are otherwise connected together in their commission; or (3) are alleged

to have been part of a common scheme or plan." Ariz. R. Crim. P. 13.3(a). The trial court may sever trial of counts that have been joined, either on motion or on its own initiative, "if necessary to promote a fair determination of any defendant's guilt or innocence of any offense[.]" Ariz. R. Crim. P. 13.4(a).

**¶36**      Here, the trial court did not fundamentally err by not *sua sponte* severing the charges. We have previously held that Rule 13.4 "does not require the court to order a severance; it only gives it the discretion to do so on its own initiative." *State v. Longoria*, 123 Ariz. 7, 10 (App. 1979). The concerns alleged by Lee are far from certain or even patent. Thus, it was not error—let alone fundamental error—for the court to not order a severance that Lee did not request.

**¶37**      Moreover, even if Lee could demonstrate error, he has not established the requisite prejudice. "When a defendant challenges a denial of severance on appeal, he 'must demonstrate compelling prejudice against which the trial court was unable to protect.'" *State v. Murray*, 184 Ariz. 9, 25 (1995) (quoting *State v. Cruz*, 137 Ariz. 541, 544 (1983)). "A defendant is not prejudiced by a denial of severance where the jury is instructed to consider each offense separately and advised that each must be proven beyond a reasonable doubt." *State v. Johnson*, 212 Ariz. 425, 430 ¶ 13 (2006) (citation modified). The jury was so instructed here.

**¶38**      Because the court properly instructed the jury on the requirement to consider each offense separately and the burden of proof of each offense, any risk of cross-contamination was mitigated by the court's instruction, which we presume the jury followed. *See Pandeli*, 242 Ariz. at 189 ¶ 58 ("We presume that jurors follow the court's instructions."). Lee did not provide evidence to refute this presumption but instead speculated as to the jury's deliberation. As such, Lee fails to establish error or prejudice.

**¶39**      The court did not err in admitting Gabby's pretrial statements because they did not violate the Confrontation Clause. Nor did the court err in not acting *sua sponte* to sever the charges.

### III.    We Amend the Sentencing Order to Comport with the Trial Court's Oral Pronouncement.

**¶40**      In its answering brief, the State observes that the trial court's order does not match its oral pronouncement of sentence in two ways. First, during oral pronouncement, the trial court explained that Count 10 was to run consecutively to Count 8, but the sentencing order shows Count 10 is to run consecutively to Count 9. Because Lee's five-year sentence for Count

9 runs concurrently with his twenty-year sentence for Count 8, this raises confusion as to whether the sentence for Count 10 begins during or after the twenty-year sentence for Count 8. Second, during oral pronouncement, the trial court explained that Count 15 was to run concurrently with Count 14, but in the sentencing order it listed Count 15 as running consecutively to Count 14.

**¶41**        When a discrepancy exists between the trial court's oral pronouncement of a sentence and a written minute entry, the "[o]ral pronouncement in open court controls over the minute entry." *State v. Whitney*, 159 Ariz. 476, 487 (1989). We can order the minute entry corrected if the record clearly identifies the intended sentence. *Id.* at 487.

**¶42**        Here, the trial court clearly stated its intent that the sentence for Count 10 run consecutively to Count 8 and the sentence for Count 15 run concurrently with Count 14. As such, the oral pronouncement controls and we order that the court's written sentencing order be amended to comport with that oral pronouncement.

## CONCLUSION

**¶43**        We vacate the superior court's sentencing minute entry. We order that it be corrected to reflect the following: Count 10 is to run consecutively to Count 8 and Count 15 is to run concurrently with Count 14. We affirm Lee's convictions and sentences in all other respects.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:             JR